IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00974-RM-MEH

AURELIO SANCHEZ,
DOMINGO SANCHEZ,
DANIEL HERNANDEZ,
MIGUEL ANGEL GODOY,
BENITA ARREOLA,
JOSE LUIS ARREOLA, and
CLARA ARRELOA, on their own behalf and on behalf of all others similarly situated,

    Plaintiffs,

v.

SIMPLY RIGHT, INC.,
CINEMARK USA, INC.,
DANIEL KILGORE, and
BEATRICE PERMANN,

    Defendants.

---

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court are Plaintiffs' Motion for Conditional Collective Action Certification [filed November 9, 2016; ECF No. 121] and Defendants' Motion to Strike or Disregard Evidence in Support of Plaintiffs' Motion for Conditional Certification [filed January 20, 2017; ECF No. 149]. The motions are fully briefed, and the Court finds oral argument (not requested by the partes) will not assist in its adjudication of the motions. For the following reasons, this Court respectfully recommends that Plaintiffs' motion be granted in part and denied in part and that Defendants'

motion be denied.[1]

**BACKGROUND**

**I.     Procedural History**

Plaintiffs (self-described janitorial employees of Defendant Simply Right, Inc. ("Simply Right") and their family members and friends working in Defendant Cinemark USA, Inc. ("Cinemark") theaters) initiated this action on May 7, 2015 and filed the operative Amended Complaint on July 10, 2015 alleging essentially that Simply Right, a cleaning service contractor, and Cinemark, the contracting party, failed to pay them minimum wages and overtime pay.[2] On August 21, 2015, the parties stipulated to stay the claims of certain Plaintiffs—Aurelio Sanchez, Domingo Sanchez, Miguel Godoy, Daniel Hernandez, Benita Arreola, and Opt-in Plaintiff Armida Raya— pending the conclusion of arbitration proceedings for each of these individuals. The claims of the remaining Plaintiffs—Jose Luis Arreola and Clara Arreola, and opt-in Plaintiffs, Nazario Arreola and Maribel Arreola— have proceeded through discovery.

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir.1991)).

[2] Plaintiffs' claims for overtime pay are asserted only against Simply Right and the individual Defendants. Am. Compl. ¶ 45. Cinemark is exempt from the obligation to pay overtime to its employees. *See* 29 U.S.C. § 213(b)(27).

2

In the operative First Amended Collective Action Complaint, Plaintiffs allege in pertinent part:

> Defendant Simply Right, Inc. is a national janitorial company operating in more than 30 states, and Defendant Cinemark USA, Inc. is the third largest movie theater company in the United States, operating 335 theaters in 41 states. Plaintiffs and those similarly situated are employed by Defendants to clean movie theaters. Defendants' cleaners spend each night cleaning the lobbies, bathrooms, kitchens, and auditoriums of each theater, including picking up garbage, wiping surfaces, cleaning seats, sweeping, vacuuming, mopping, scrubbing toilets and walls, dusting, and replacing soap and paper products.
>
> Defendants pay their employees across the nation below the minimum wage for this work. For example, Defendants paid the named Plaintiffs between $3.57 and $5.55 per hour, and no overtime, for their work. That is, Plaintiffs Lazario and Maribel Arreola each averaged 21 hours of work each week and were paid a total of $300 (together, not each) every two weeks, which calculates as $3.57 per hour for their work. Similarly, Plaintiffs Aurelio and Domingo Sanchez and Miguel Angel Godoy worked together and averaged 138.75 total hours of work each week cleaning theaters for Defendants. Defendants paid these Plaintiffs $1,541 every two weeks with no overtime premiums, which calculates to $5.55 per hour.
>
> Defendants subject all their employees across the nation to this policy of refusing to pay minimum and overtime wages. Plaintiffs and other employees handle cleaning materials such as soap, brooms, vacuums, mops and other materials which moved in interstate commerce each year relevant to this action. Defendants enjoyed more than $500,000.00 in gross receipts each year relevant to this action.
>
> The work performed by Plaintiffs and the putative Members of the Class was not specialty work requiring any sort of labor certification, but was menial janitorial labor. Plaintiffs and the putative Members of the Class did not clean other theaters, but worked exclusively for Cinemark. Plaintiffs and the putative Members of the Class were not in business for themselves, they did not run their own businesses, own their equipment, or

seek contracts with other theaters. Rather, they were dependent on Cinemark for their employment.

*See* First Am. Collective Action Compl. ("Am. Compl."), ECF No. 23.

## **ANALYSIS**

Before commencing an analysis of the Plaintiffs' motion seeking conditional certification, the Court must first determine whether certain exhibits submitted by Plaintiffs in support of their motion need be stricken as argued by the Defendants.

**I.     Strike Exhibits**

Defendants ask the Court to "strike in its entirety the declarations of Maria de Jesus Morales-Lopez, Adrian Reyes, Eriberto Aleman de los Santos, Alfonso Solis, Pedro German Hernandez, Maria de la Luz Lopez, Domingo Sanchez, and Daniel Hernandez because the Spanish to English translations have not been properly authenticated." These declarations are found at ECF Nos. 121-2, 121-3, 121-4, 121-5, 121-7, 121-8, 121-11, and 121-12, respectively. Alternatively and additionally, Defendants argue Mr. Aleman de los Santos' declaration should be stricken because Defendants were unable to depose him despite best efforts; Mr. Aleman de los Santos' and Mr. Solis' declarations contain translation errors; and ten of the declarations contain testimony that lacks foundation and is conclusory.

Plaintiffs respond identifying their counsel, Brandt Milstein, as fluent in Spanish and as having extensive experience and immersion in the Hispanic culture, having lived, studied, and worked in Mexico and Central America. Declaration of Brandt Milstein ("Milstein Decl.") ¶¶ 3–5, ECF No. 165-1. Mr. Milstein certified that the translations are true and complete. *Id.* ¶ 7. Further, Plaintiffs argue any translation "errors" are immaterial to the issue of whether conditional certification should be granted. Finally, Plaintiffs contend the declarants' testimony is not

inadmissible simply because they refer to their employers as "they" and reference "overtime" wages in the testimony.

Although provided an opportunity to do so, the Defendants did not file a reply brief.

The Court has reviewed the challenged declarations as translated by Mr. Milstein (ECF Nos. 121-2, etc.) and the Declaration of Jeannette Garofalo ("Garofalo Decl."), Defendants' translator (ECF No. 149-4), and finds that any discrepancies between the translations are minimal and insufficient to form a basis for striking the challenged affidavits. For instance, the fact that the English language translations of Exhibits 4 and 5 do not include statements declaring the information is true "under penalty of perjury" is insignificant so long as the Spanish declarations, which were actually signed by the declarants, contain such statement. Garofalo Decl. ¶ 4, ECF No. 149-4). Moreover, whether a Spanish word is translated as "busy" or "dirty," the declarant still testifies that a supervisor asked him to bring five members of his family to help clean the theater. *Id.* ¶ 6. Finally, the English translation of, "They never paid my wages, they only paid me" is implied in the declarant's testimony, "For a time during our employment, they only paid me $500 every two weeks." *Id.* ¶ 5; *see also* Declaration of Eriberto Aleman de los Santos, ECF No. 121-4.

To the extent any declaration submitted on behalf of either position contains testimony that is "lacking in foundation or improperly states a legal conclusion," the Court will (as with any such declaration) disregard the testimony. *See* Mot. at 1–2.

Notably, the Plaintiffs do not respond to Defendants' contention that Mr. Aleman de los Santos' declaration should be stricken due to Defendants' inability to depose him. Defendants cite primarily unpublished cases outside of this Circuit in support of their contention. Mot. 4–5. This is not a situation where Defendants have simply neglected to take the declarants' depositions. *See*

*Enos-Martinez v. Bd. of Cnty. Comm'rs of the Cnty. of Mesa*, No. 10-cv-00033-WJM, 2012 WL 1079442, at *3 (D. Colo. Mar. 30, 2012). Nor has Mr. Aleman de los Santos failed to appear for a properly noticed deposition. *See Danjanovich v. Robbins*, No: 2:04-CV-623 TS, 2006 WL 842907, at *3 (D. Utah Mar. 27, 2006) (citing Fed. R. Civ. P. 37(d)).

However, Defendants have attempted to serve him with a deposition subpoena at an address at which he no longer resides, and neither the process server nor Plaintiff's counsel possess additional information as to Mr. Aleman de los Santos' whereabouts. Consequently, the Defendants argue, "To permit Plaintiffs to rely on untested declarations would be unduly prejudicial, particularly since many of the declarants recanted their declaration testimony during [deposition] testimony." Mot. 4. Plaintiffs do not respond and, thus, the Court construes the argument as uncontested.

At the same time, the Defendants do not rebut the Plaintiffs' argument that, on January 17, 2017, Defendants first disclosed the existence of its witnesses, who signed declarations in support of Defendants' responses to the motion for conditional certification,[3] *three days* before the declarations were filed. Reply in Support of Motion for Conditional Certification, ECF No.162 at 9. Obviously, then, the Plaintiffs were unable to depose these witnesses before the 14-day deadline to file their reply brief.

Under these circumstances, the Court recommends that Judge Moore deny the Defendants' motion to strike the challenged declarations, and simply consider and/or weigh the declarations in conjunction with the evidence submitted.

## II.  Conditional Certification

---

[3]Simply Right submitted the declarations of 13 current employees in support of its response to the present motion. *See* Exs. C, D, E, and U, ECF No. 152.

In their motion, Plaintiffs ask the Court to "[c]onditionally certify this case to proceed as a 'collective action' under [the Fair Labor Standards Act,] 29 U.S.C. § 216(b) [("FLSA")] and define the class as 'All Simply Right employees who cleaned Cinemark theaters on or after May 7, 2012.'" Mot. 19. "Under the FLSA, . . . 'conditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees." *Genesis Healthcare Corp. v. Symczyk*, -- U.S. --, 133 S. Ct. 1523, 1530, 185 L. Ed. 2d 636 (2013).

Judge Moore has explained the legal framework for conditionally certifying a collective action under FLSA:

> Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of overtime provisions. It provides in part:
>
>> An action to recover the liability [for unpaid overtime compensation, retaliation and liquidated damages] may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.
>
> 29 U.S.C. § 216(b).
>
> The FLSA requires that non-exempt employees be paid overtime compensation for time worked in excess of forty (40) hours in one work week. 29 U.S.C. § 207(a). The minimum rate of compensation that an employer must pay a non-exempt employee for overtime work is one-and-one-half times the employee's hourly rate. 29 U.S.C. § 207(a)(1). . . .
>
> The Tenth Circuit has approved the use of a two-step process for determining whether putative class members are similarly situated to the named plaintiff. In *Thiessen v. General Electric Capital Corp.*, the court outlined the case-by-case or "ad hoc" method as follows: at the first step, prior to discovery, the district court makes a "notice stage" determination of whether the plaintiffs are similarly situated. 267 F.3d 1095, 1105 (10th Cir. 2001). For conditional certification at the notice stage, the Tenth Circuit "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102. "The standard for certification at this stage is a lenient one."

> *Baldozier v. Am. Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005).
> At this stage, "a court need only consider the substantial allegations of the complaint
> along with any supporting affidavits or declarations." *Smith v. Pizza Hut, Inc.*, No.
> 09–cv–01632–CMA–BNB, 2012 WL 1414325 (D. Colo. Apr. 21, 2012) (quoting
> *Renfro v. Spartan Computer Servs.*, Inc., 243 F.R.D. 431, 434 (D. Kan. 2007)).
>
> In the second stage, which comes at the conclusion of discovery and often in the
> context of a defense motion to decertify the class, the court applies a stricter standard
> of "similarly situated," including application of at least four factors, to determine
> whether the case can proceed as a class action. *Thiessen*, 267 F.3d at 1102–03;
> *Daugherty v. Encana Oil & Gas (USA), Inc.*, 838 F. Supp. 2d 1127, 1132–33 (D.
> Colo. 2011).

*Lysyj v. Milner Distrib. All., Inc.*, No. 13–cv–01920–RM, 2014 WL 273214, at *2–3 (D. Colo. Jan. 24, 2014). The first "notice" stage, for which the present motion is filed, is a matter of facilitating notice to potential opt-in plaintiffs and conducting specific discovery for that purpose. *See Hoffman–La Roche Inc. v. Sperling*, 493 U.S. 164, 170–71 (1989).

Here, Plaintiffs contend they have made "substantial allegations" demonstrating they "were together the victims of a single decision, policy, or plan," which they define as a failure to pay minimum wage and/or overtime by hiring "immigrants"; "encourag[ing], suffer[ing] and permit[ting] their employees to bring 'helpers' with them to clean" (referred to by the parties as "piggybacking"); and, failing to "pay the 'helpers' for their labor." Mot. 1. Plaintiffs support their contention with the operative pleading and the attached declarations by nine current and former "janitors"[4] in five states (CO, OH, KY, MI, and UT); by a former Simply Right supervisor who testified that minimum wage and overtime violations occurred in four states (TX, NM, WY, and SD); and by Defendants' Rule 30(b)(6) deponent who testified Simply Right had been sued for the

---

[4]Simply Right's job description refers to the position as "janitor" (ECF No. 121-14); accordingly, the Court may refer to the Plaintiffs and/or putative collective action members or witnesses as "janitors."

same type of violation in one state (FL).

Simply Right counters that Plaintiffs' proposed class definition is overly broad; the putative class is logistically impossible to manage due to Simply Right's lack of information and/or records for individuals who "worked off-the-clock"; many of the putative class members signed arbitration agreements; and, the proposed class "invites abuse, because anyone could claim to have performed work without signing up with Simply Right and seek to become part of the collective [action], without making any showing that they ever actually went to and cleaned a theatre." Resp. 2, ECF No. 152. Simply Right also argues that the Plaintiffs' declarations are "inconsistent" and "unreliable" and should be disregarded, the named Plaintiffs have no standing to bring overtime claims, and Simply Right's submitted "substantial evidence contradicts the putative class members' claims." *Id.*

Cinemark responds that the Court must resolve at the outset whether it is a "joint employer" potentially liable for the Plaintiffs' claims; until then, Cinemark argues, the Court should certify no collective action against Cinemark. In addition, Cinemark contends Plaintiffs make no allegations that Cinemark had any involvement in paying them and, thus, Plaintiffs fail to demonstrate "substantial allegations" that Cinemark engaged in a policy that deprived the janitors of minimum wage. Further, Cinemark argues Plaintiffs are not similarly situated; they do not allege that Cinemark knew the allegedly unpaid "helpers" were unpaid by Simply Right; Plaintiffs offer no way to identify the "helpers," verify their claims, or send them notice; and the proposed notice is deficient.

Plaintiffs reply that Defendants should not be permitted to rely on their own failure to maintain employment records as a defense to FLSA claims; Defendants' arguments as to

9

manageability of the collective action are premature; credibility determinations are not to be made at the notice stage; the declarations by current "happy camper" employees should be disregarded; any purported arbitration agreements do not serve as a bar to conditional certification; and Cinemark's "threshold element" that the joint employer issue must be first addressed is unsupported by the law. Additionally, in an effort to make it "more precise," Plaintiffs amend the proposed class definition as: "All Simply Right employees who cleaned Cinemark theaters on or after May 7, 2012 who either brought others to help them clean or [ ] worked more than forty hours per week." Reply, ECF No. 162 at 15.

On March 24, 2017, the parties filed supplemental briefs at the Court's request concerning "the status of the 'stayed' Plaintiff's claims" and "whether the claims of the 'stayed' Plaintiffs should be considered for purposes of the present motion." Order, ECF No. 170. Plaintiffs contend that the claims of only two "stayed" Plaintiffs have been settled and that, even if those claims are not considered, the remaining Plaintiffs' allegations and evidence are sufficient to demonstrate conditional certification. *See* ECF No. 172. Defendants counter that a finding on conditional certification would require a ruling on the merits, and the Court lacks jurisdiction to decide the merits of claims referred to arbitration (*see* ECF No. 171); thus, the Court should not consider the stayed Plaintiffs' claims for purposes of this motion.

Mindful of the "lenient" standard for conditional certification and persuaded by the cases cited by Plaintiffs, the Court concludes that it may consider the allegations and evidence put forth by all Plaintiffs in this case, whether they are stayed, settled, or active in this litigation. Defendants do not convince the Court that a "ruling on the merits" (*i.e.*, whether Defendants violated the FLSA as alleged) is necessary for disposition of Plaintiffs' motion; in fact, the Court's only function here

10

is simply to review the record to determine whether "the substantial allegations of the complaint along with any supporting affidavits or declarations" demonstrate Plaintiffs were "together the victims of a single policy, plan, or practice." *Lysyj*, 2014 WL 273214, at *3. Although the claims of Daniel Hernandez and Benita Arreola have been settled, they remain as Plaintiffs in the case and there is no indication from the parties that the settlement included an agreement not to participate (even as witnesses) in the litigation.

Therefore, based on Plaintiffs' amended proposed class definition, the Court will analyze whether Plaintiffs and putative collection action members are similarly situated—*i.e.*, whether they have asserted substantial allegations that they together were victims of minimum wage violations (via "piggybacking") and/or of overtime violations.

A. <u>Minimum Wage Claims</u>

In the FAC, Plaintiffs allege that five of the Plaintiffs— Lazario Arreola, Maribel Arreola, Aurelio Sanchez, Domingo Sanchez, and Miguel Angel Godoy—received below minimum wages for their work. Am. Compl. ¶¶ 22–23. Former Simply Right supervisor, Armida Raya, attested that "Simply Right uses a scheme wherein they sign up employees as independent contractors, pay them a flat rate to clean theaters, and, often, have more than one employee work under each contract's flat rate." Declaration of Armida Raya, May 26, 2015 ("Raya Decl.") ¶ 9, ECF No. 121-10. She asserts that she discussed with Beatrice Perman [Simply Right Vice President] the fact that more than one person was working under each contract in Greeley and in Lakewood, and Perman instructed her "to have the employees 'get help' to complete the theaters each night." *Id.* ¶ 11–12. Raya also contends that Simply Right employees working in theaters in Colorado, Texas, Wyoming, and South Dakota, over which she had supervision, were paid less than the hourly minimum wage. *Id.* ¶¶ 6–7.

11

Specifically regarding the Plaintiffs, Raya testified that Aurelio and Domingo Sanchez were brothers and they "work[ed] together under Domingo's contract to clean theaters in Lakewood, Colorado." *Id.* ¶ 12. In addition, Domingo Sanchez testified that he worked not only with Aurelio, but also with Miguel Godoy and "[i]t was part of the deal that one person would sign the documents and other people would come with that person to clean the theaters." Declaration of Domingo Sanchez, July 1, 2015 ("Sanchez Decl.") ¶¶ 3, 5. Likewise, Daniel Hernandez testified that his wife, Benita Arreola, worked with him under his contract with the knowledge of both Raya and Perman, and they together were paid $360 every two weeks for 50 hours of work. Declaration of Daniel Hernandez, July 2, 2015 ("Hernandez Decl.") ¶¶ 3–6. Finally, Maribel Arreola testified that Perman suggested to her if she "went to help [her] husband, that it would be faster" and told her, "many people . . . bring another person with them so that the work goes faster." Deposition of Maribel Arreola, September 30, 2016, 49: 2–25, 50: 1–23; *see also* Deposition of Nazario Arreola, September 30, 2016, 33: 10–14 ("And [Perman] told me you can take your wife and you can even take your children.").

Plaintiffs also submitted the declarations of Simply Right employees who have worked outside Colorado. For example, Maria de Jesus Morales-Lopez declared that she cleaned theaters in Salt Lake City, Utah and brought her daughter to help her with the permission of her supervisor, "Alma"; Maria was paid $600 every two weeks for 42-56 hours. Declaration of Maria de Jesus Morales-Lopez, September 20, 2016, ¶¶ 2–5, ECF No. 121-2. Similarly, Adrian Reyes worked in Salt Lake City and testified his wife helped him clean theaters on the same schedule as his work hours; Simply Right paid him $500 every two weeks for approximately 98 hours of work. Declaration of Adrian Reyes, September 29, 2016, ¶¶ 2–5, ECF No. 121-3. Moreover, Eriberto

Aleman de los Santos testified that he worked for Simply Right cleaning theaters in Deerpark, Illinois, his supervisors knew that his wife worked with him, and he was paid $500 every two weeks for 35 hours of work. Declaration of Eriberto Aleman de los Santos, September 7, 2016, ¶¶ 2–7. In addition, Alfonso Solis worked for Simply Right cleaning theaters in Cincinnati, Ohio and brought his wife and other family members to help, at least once at the request of his supervisor, but these people were not paid for their work. Declaration of Alfonso Solis, September 8, 2016, ¶¶ 2–6. Maria de la Luz Lopez worked for Simply Right cleaning theaters in West Jordan, Utah in 2014 and occasionally brought a friend to help her clean with permission from her supervisor, "Gabriel"; however, her friend was not paid for her work. Declaration of Maria de la Luz Lopez, September 26, 2016, ¶¶ 2–5. Finally, Brandon Willingham testified that he worked for Simply Right cleaning theaters in Flint, Michigan in 2016, where his supervisor approved his request to have a "helper" clean the theaters with him, but the helper was never paid for his work. Declaration of Brandon Willingham, October 10, 2016, ¶¶ 2–5.

Simply Right counters with declarations of current Simply Right employees from Albuquerque, New Mexico, Piqua, Ohio, West Jordan, Utah, Altoona, Iowa, Huntsville, Alabama, Moosic, Pennsylvania, Springfield, Oregon, and Aurora, Colorado testifying they were not permitted to bring helpers and/or never witnessed other employees bringing non-employees to help them clean. *See* Exs. C, D, E, and U, ECF Nos. 152-3, 152-4, 152-5, 152-21–152-25.[5] Simply Right also submitted deposition testimony of two of Plaintiffs' witnesses in an effort to impeach them. For example, Maria de Jesus Morales-Lopez testified she did not know she was not required to sign her

---

[5] Cinemark submitted copies of the same declarations at Exhibit 3, ECF Nos. 153-4 and 153-5.

declaration, and she did not have the opportunity to make changes to it. Deposition of Maria de Jesus Morales-Lopez, January 11, 2016, 12: 1–6, ECF No. 152-9. She also testified that she worked at Simply Right for only 12-15 days, and it took her daughter two hours to finish the work helping Maria each day. *Id.* 22: 22–25; 36: 19–24. At his deposition, Adrian Reyes provided the same testimony about his declaration and conceded that his wife was paid separately by Simply Right for her work. Deposition of Adrian Reyes Enriquez, January 11, 2016, 24: 13–21, ECF No. 152-11.

Furthermore, Simply Right submitted deposition testimony to impeach one of the Plaintiffs' declarations. Daniel Hernandez testified he was "not sure" that his declaration concerning the amount Simply Right paid him every two weeks ($360) was accurate, given payroll records from January 2014 reflecting payments between $473 and $625. Deposition of Daniel Hernandez Gonzalez, September 26, 2016, 72: 3–25, 73: 1–19, ECF No. 152-18. He also testified that he worked "more than 40" hours per week in contravention of his declaration stating that he worked 25 hours per week. *Id.* 74: 20–15, 75: 1–6.

Implicit in Defendants' submissions is a request that the Court engage in a "second-stage" analysis of whether to certify a collective action, which is improper at this initial stage. It is only at the second stage, after completion of merits discovery, that a court must evaluate the "disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether plaintiffs made [any required filings] before instituting suit." *Thiessen*, 267 F.3d at 1103 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). Therefore, "I decline to consider second-stage factors because the court bifurcated discovery into two phases and merits discovery has not begun." *Abdulina v. Eberl's Temp. Servs., Inc.*, No. 14-cv-00314-RM-

NYW, 2015 WL 12550929, at *4 (D. Colo. Apr. 27, 2015), *report and recommendation adopted as modified*, 2015 WL 4624251 (D. Colo. Aug. 4, 2015) (citing *Cannon v. Time Warner NY Cable LLC*, No. 13-cv-02521-RM-MJW, 2014 WL 4401313, at *6 (D. Colo. Sept. 5, 2014) (rejecting defendant's proposed application of second stage factors in determining a motion for conditional certification where only pre-certification discovery had taken place), *report and recommendation adopted as modified*, 2014 WL 4980383 (D. Colo. Oct. 6, 2014)).

The Court recommends Judge Moore find at this initial stage that Plaintiffs have provided substantial allegations that the putative collective action members are similarly situated, based on allegations and evidence demonstrating that janitorial employees (and their "helpers") working in Cinemark theaters in Colorado, Utah, Illinois, Ohio, Texas, Wyoming, South Dakota, and Michigan have not been paid the hourly minimum wage required under the FLSA. *See Daugherty*, 838 F. Supp. 2d at 1133 ("Generally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying [minimum wage] is sufficient to allege that plaintiffs were together the victims of a single decision, policy or plan.") (quoting *Renfro v. Spartan Computer Servs., Inc.*, 243 F.R.D. 431, 433–34 (D. Kan. 2007)).

B. <u>Overtime Claims</u>

Plaintiffs allege in the FAC that Defendants Simply Right, Kilgore and Perman failed to pay overtime wages to Simply Right employees, including Domingo Sanchez, and his helpers, Aurelio Sanchez and Miguel Angel Godoy, who "worked together and averaged 138.75 total hours of work each week cleaning theaters for Defendants." Am. Compl. ¶ 23. Domingo Sanchez testified in his declaration that he worked an average of 57.75 hours per week, Aurelio worked an average of 63 hours per week, and Miguel worked an average of 18 hours per week. Sanchez Decl. ¶ 4. In

addition, Armida Raya testified that she supervised employees in Colorado, Texas, Wyoming, and South Dakota and that "[i]n none of these states were Simply Right's employees paid overtime wages for hours worked beyond forty each week."  Raya Decl. ¶¶ 6, 8.

Moreover, Plaintiffs submitted the following declarations in support of their request for conditional certification.  Adrian Reyes from Salt Lake City declared that he "worked about 7 hours each night cleaning the theaters, 7 nights per week" and Simply Right "never paid me . . . overtime wages for each hour over 40 [I] worked each week."  Reyes Decl. ¶¶ 3, 5.  Similarly, Kyle Syndor from Florence, Kentucky testified that he "worked, on average, 6.5 hours each night, 7 days per week," but "was never paid overtime rates for the hours I worked beyond 40 each workweek." Declaration of Kyle Syndor, September 16, 2016 ("Syndor Decl.") ¶¶ 3, 5, ECF No. 121-6.  Also from Florence, Kentucky, Pedro German Hernandez testified that he "work[ed] 9-10 hours each day cleaning the theaters, 7 days per week" and Simply Right "[did] not pay me overtime wages for each hour over 40 I worked each week."  Declaration of Pedro German Hernandez, September 28, 2016 ("German Hernandez Decl.") ¶¶ 3, 4, ECF No. 121-7.  Maria de la Luz Lopez from West Jordan, Utah testified that she "worked about 7.5 hours or more each night cleaning the theaters, 6 or 7 nights each week" and Simply Right "never paid me overtime wages for each hour over 40 I worked each week."  Lopez Decl. ¶¶ 3, 4.

With the above-cited legal principles in mind, the Court recommends that Judge Moore find at this initial stage that Plaintiffs have provided substantial allegations that the putative collective action members are similarly situated, based on allegations and evidence demonstrating that janitorial employees working in Cinemark theaters in Colorado, Utah, Kentucky, Texas, Wyoming, and South Dakota have not been paid overtime wages as required under the FLSA.

16

Accordingly, the Court recommends that Judge Moore grant in part Plaintiffs' motion for conditional certification of a collective action defined as follows: "All Simply Right employees who cleaned Cinemark theaters on or after May 7, 2012 who brought non-employees to help them clean and/or who worked more than forty hours per week without payment of one-and-one-half times their regular rate for those hours worked over forty."

## III. Certification Notice

Once the Court concludes that conditional certification of an FLSA collective action is appropriate, the Court may authorize the plaintiff to disseminate a proper notice and opt-in consent form to putative collective action members. *See Hoffman–LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The Court has broad discretion to modify and approve the details of the notice sent to potential opt-in plaintiffs. *Hoffman–LaRoche*, 493 U.S. at 171. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [putative collective action members] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal citations and quotations omitted).

In *Lysyj*, Judge Moore approved a notice informing putative collective action members of the parties involved, the parties' general allegations, information about the collective action designation, how and when putative plaintiffs must opt in, and the potential obligations or consequences for putative class members who choose to opt-in. No. 13-cv-01930-RM, ECF No. 51

17

at 12–13. Mindful of Judge Moore's approved notice, the Court finds Plaintiffs' proposed Notice deficient in the following ways: (1) it must contain the collective action definition set forth in this recommendation; (2) under Section 1, the Plaintiffs' allegations improperly suggest that Cinemark is liable for any unpaid overtime wages; (3) the Notice does not identify defense counsel and the defenses are not adequately stated; (4) under Section 2, the first sentence is confusing as written and the second sentence should be modified in accordance with the collective action definition set forth in this recommendation; (5) under Section 4, the Notice refers to the "FLSA" but does not identify the acronym or explain the statute. Also, the section does not inform putative plaintiffs of their potential obligations in the lawsuit—*i.e.*, "while this lawsuit is pending you may be required to submit copies of documents to and written answers to questions by Simply Right and Cinemark or to testify under oath at a deposition, hearing or trial in Colorado"; (6) Section 5 does not inform putative plaintiffs of their options for representation—*i.e.*, "If you chose to join in the lawsuit you may (1) represent yourself, (2) hire a lawyer of your choice, or (3) hire [Plaintiffs' attorney]. . . ."; (7) Section 7 is repetitive of the warning already set forth at the top of the first page of the Notice and, thus, is unnecessary; (8) the Notice does not contain language indicating the Court's neutrality in this action—i.e., "THIS NOTICE HAS BEEN AUTHORIZED BY THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO. THE COURT HAS TAKEN NO POSITION IN THIS CASE REGARDING THE MERITS OF PLAINTIFFS' CLAIMS OR DEFENDANTS' DEFENSES."; and (9) the Notice identifies Plaintiffs' counsel as the "administrator" of the collective action, when it would be just and proper to use a third-party administrator to oversee the collective action.

In light of these deficiencies, the Court recommends that Judge Moore order the parties to

confer and construct a mutually-agreed Notice and Consent to Join form, and if they cannot agree as to any terms on such form, to appear before the Court for a ruling as to any disagreements.

The Court also recommends that once the Notice and Consent to Join are finalized, they may be issued to putative collective action members, for which Defendants will provide contact information (names and last known addresses and/or telephone numbers) and dates of employment.

## CONCLUSION

Based on the entire record and for the reasons stated above, the Court respectfully recommends that Plaintiffs' Motion for Conditional Collective Action Certification [filed November 9, 2016; ECF No. 121] be **granted in part and denied in part** as set forth herein, and Defendants' Motion to Strike or Disregard Evidence in Support of Plaintiffs' Motion for Conditional Certification [filed January 20, 2017; ECF No. 149] be **denied**.

Respectfully submitted at Denver, Colorado, this 13th day of April, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge