**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**


Case No. 15-cv-00974-RM-MEH

AURELIO SANCHEZ, *et al.,*

　　　　Plaintiffs,

v.

SIMPLY RIGHT, INC., *et al.*,

　　　　Defendants.

---

## OPINION AND ORDER

---

Pending before the Court is the February 27, 2017 Report and Recommendation ("R&R")

of U.S. Magistrate Judge Michael E. Hegarty (ECF No. 168),[1] recommending denying defendant

Cinemark USA, Inc.'s ("Cinemark") motion for summary judgment, and recommending denying in

part and denying without prejudice in part plaintiffs'[2] motion for partial summary judgment. Both

parties sought summary judgment as to whether Cinemark was plaintiffs' joint employer for

purposes of the Fair Labor Standards Act ("FLSA").

---

[1] Another Report and Recommendation (ECF No. 174), as well as two other motions (ECF Nos. 177, 178) are also pending before the Court. The Court will address those matters in other order(s).

[2] The named plaintiffs in this action are: Aurelio Sanchez ("Aurelio"); Domingo Sanchez ("Domingo"); Daniel Hernandez ("Hernandez"); Miguel Angel Godoy ("Godoy"); Benita Arreola ("Benita"); Jose Luis Arreola ("Jose Luis")' and Clara Arreola ("Clara"). Three further individuals have opted to join this lawsuit: Maribel Arreola ("Maribel"); Nazario Arreola ("Nazario"); and Armida Raya ("Raya").

The Magistrate Judge recommended denying plaintiffs' motion for partial summary judgment, in part, without prejudice as to Aurelio, Domingo, Hernandez, Godoy, Benita and Raya because their claims were stayed for arbitration. (ECF No. 168 at 3-4.) The Magistrate Judge next recommended reserving judgment as to whether plaintiffs were entitled to summary judgment with respect to their claims on behalf of the purported class because this case had not yet been conditionally certified as a class action. (*Id*. at 4.) Finally, the Magistrate Judge recommended denying Cinemark's motion for summary judgment and plaintiffs' motion for partial summary judgment as it pertained to Maribel, Nazario, Jose Luis, and Clara (collectively, "the non-stayed plaintiffs") because there were genuine issues of fact as to whether Cinemark was the joint employer of the non-stayed plaintiffs. (*Id*. at 33.) In so recommending, the Magistrate Judge also forewarned the parties that they would have 14 days to file specific, written objections to the R&R. (*Id*. at 2 n.1.)

Fourteen days later, Cinemark filed the only timely objections to the R&R. (ECF No. 169.) Eleven days thereafter, plaintiffs filed a response to Cinemark's objections. (ECF No. 173.)

## I.     Review of a Magistrate Judge's Report and Recommendation

A district court may refer pending motions to a magistrate judge for entry of a report and recommendation. 28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b). The court is free to accept, reject, or modify, in whole or in part, the findings or recommendations of the magistrate judge. 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(3). A party is entitled to a *de novo* review of those portions of the report and recommendation to which specific objection is made. *See* Fed.R.Civ.P. 72(b)(2), (3). "[O]bjections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Furthermore, arguments not raised before

the magistrate judge need not be considered by this Court.  *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

"When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  Fed.R.Civ.P. 72, Adv. Comm. Notes, subdivision (b) (1983); *see also Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a magistrate's report under any standard it deems appropriate.").

## II.   Legal Standard for Summary Judgment

Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  Initially, the movant bears the "responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  If this burden is met, then the non-moving party must set forth specific facts showing that there is a genuine dispute for trial.  *Id*. at 324.  If the moving party bears the burden of persuasion on a claim at trial, that party must support its motion with evidence that, if uncontroverted, would entitle it to a directed verdict at trial.  *Anderson v. Dep't of Health & Human Servs.*, 907 F.2d 936, 947 (10th Cir. 1990) (citing *Celotex Corp.*, 477 U.S. at 331).

A fact is material if it has the potential to affect the outcome of a dispute under applicable law.  *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995).  An issue is genuine if a rational trier of fact could find for the non-moving party.  *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d

1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Adams*, 233 F.3d at 1246. However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Instead, a non-movant "must proffer facts such that a reasonable jury could find in her favor." *Id*.

## III.    Matters to Which No Objection is Raised

Neither party raises any objection to the Magistrate Judge's recommendations to deny without prejudice plaintiffs' motion for partial summary judgment as to Aurelio, Domingo, Hernandez, Godoy, Benita, and Raya, as well as with respect to the proposed class. (ECF No. 168 at 3-4, 33.) As a result, the Court ADOPTS those recommendations, and DENIES WITHOUT PREJUDICE plaintiffs' motion for partial summary judgment in those respects.

There are also no objections to the Magistrate Judge's recommendation to deny plaintiffs' motion for partial summary judgment in all other respects. (*Id*. at 33.) As a result, the Court also ADOPTS that recommendation, and DENIES plaintiffs' motion for summary judgment as it pertains to the non-stayed plaintiffs.

The only matters subject to objection are the Magistrate Judge's recommendation with respect to Cinemark's motion for summary judgment, which the Court takes up now.

## IV.    Objections to the Magistrate Judge's Factual Findings

Cinemark raises objections to both the Magistrate Judge's factual findings and legal conclusions. The Court addresses the factual disputes first.[3] As an initial matter, Cinemark raises

---

[3] The Court notes that plaintiffs do not respond to any of Cinemark's objections to the Magistrate Judge's factual findings. (*See generally* ECF No. 173.)

some general objections to the Magistrate Judge's factual findings. One of these appears to be a dispute over the Magistrate Judge's word choice, as Cinemark objects to the Magistrate Judge saying that "findings of fact" were made. (*See* ECF No. 169 at 18.) This is an objection that the Court rejects. The R&R is clear that the Magistrate Judge was making factual findings for purposes of summary judgment; nothing more, nothing less. To the extent Cinemark believes that facts were found for all purposes, including trial, this is simply not what happened. The factual findings in the R&R are purely for summary judgment purposes (as one would expect seeing as the R&R addressed motions for summary judgment).[4]

Next, Cinemark objects to "any findings that are not supported by the record." (*Id.*) To the extent this is meant to be a standalone objection, it is grossly generalized, and the Court rejects it for that reason. Instead, the Court will only address those factual findings Cinemark specifically addresses. First among those specifically-addressed factual findings is factual finding 14. (*Id.*) The Court agrees with Cinemark, in part. Because the factual finding is a summary of deposition testimony, the Court finds it easier to simply recite the testimony in fuller detail. As such, factual finding 14 is changed to the following: Raya visited theaters in Fort Collins, Boulder, and Aurora more frequently because "sometimes" there were no cleaners and "sometimes" there were problems with the cleaning. (ECF No. 123-5 at 47:12-21.) Cinemark alerted Raya to problems with the cleaning in these theaters. (*Id.* at 47:22-24.) Raya did not have problems with, *inter alia*, Jose Luis and Clara, who, it appears, worked at a theater in Greeley. (*Id.* at 102:9-11.)[5]

---

[4] This includes any objection to factual findings 29, 48-49. (*See* ECF No. 169 at 20.)

[5] Cinemark also objects on the ground that Raya's testimony does not reflect that she meant the word "problem" in the sense of a problem with cleaning. (ECF No. 169 at 18.) The Court disagrees, given that Raya uses the word "clean" in the immediately preceding sentence.

Second, Cinemark objects to part of factual finding 18. (ECF No. 169 at 18-19.) The Court agrees with Cinemark, in part. As such, the second sentence of factual finding 18 is changed as follows: Janitors did walk-through inspections of their cleaning work with Raya for theaters in Lakewood, Fort Collins, and Greeley. (ECF No. 134-6 at 141:15-18.) "Sometimes" the janitors would do the walk-throughs because they were still at the theater, and "sometimes" the theaters' manager would request for the janitors to do them. (*Id*. at 141:23-142:2.) A manager at the Greeley theater asked "maybe like two or three times" for janitors to do a walk-through. (*Id*. at 142:19-143:18.) "Daniel and Benita" were the janitors that did the walk-throughs at the Greeley theater. (*Id*. at 143:19-21.) Raya would tell the janitors in advance when they needed to be at the theater for a walk-through, including walk-throughs requested by a Cinemark manager. (*Id*. at 144:19-145:20.)[6]

Third, Cinemark objects to factual finding 20. (ECF No. 169 at 19.) The Court agrees with Cinemark, in part. As such factual finding 20 is changed to the following: Managers from Cinemark sent Raya emails with times they would like cleaners to start work. (ECF No. 134-6 at 110:17-19.)[7] In response to a question, Raya affirmed that there were no set times for cleaners to start, but only times when cleaners could not be cleaning. (*Id*. at 110:21-24.) "[S]ometimes," Cinemark managers would tell cleaners it was not the right time to start work because movies were playing. (*Id*.

---

[6] Cinemark asserts that Raya selected who to bring on the walk-throughs. (ECF No. 169 at 19.) Raya's deposition testimony is not clear on this issue, however, as she both responds to a question whether she selected "Daniel and Benita" with a "[y]es," and that a Cinemark manager requested her to tell the janitors to do walk-throughs "maybe like about two or three times." (ECF No. 134-6 at 142:19-25, 143:23-25.) The Court will not resolve this apparent ambiguity in Raya's deposition testimony in Cinemarks' favor at this stage in proceedings.

[7] Cinemark appears to assert that emails were sent only with respect to "midnight showings." (ECF No. 169 at 19) (alteration and quotation omitted). This mischaracterizes Raya's testimony, however, as she used "midnights" as an example of when she would have to tell cleaners when to arrive. (ECF No. 134-6 at 110:17-20.)

at 111:6-11.) This happened when Cinemark managers forgot to send Raya emails telling her when cleaning could start. (*Id*. at 111:3-11.)

Fourth, Cinemark objects to factual finding 32. (ECF No. 169 at 19.) The Court agrees with Cinemark, in part. As such, factual finding 32 is changed to the following: Maribel testified that the theater she worked in needed to be cleaned by 10:30 a.m., but it did not matter when she arrived to start cleaning, as long as the theater was clean by 10:30 a.m. (ECF No. 123-10 at 18:13-19:1.) "[S]ometimes" Maribel and Nazario cleaned in the mornings because they wanted to spend the rest of the day with their family or because Nazario was going to his other job. (*Id*. at 54:4-18.)

Fifth, Cinemark objects to part of factual finding 48; specifically, the sentence finding that Raya told Jose Luis that certain work was not part of the contract between Cinemark and Simply Right, Inc. ("Simply Right") and such work had to be done by Cinemark employees. (ECF No. 169 at 19.) Cinemark objects on the ground that the factual finding is based upon inadmissible hearsay— Jose Luis' testimony about what Raya told him. (*Id*.) The Court agrees with Cinemark. As noted, plaintiffs do not respond to this objection, but the only conceivable non-hearsay purpose the Court can imagine for the statement is for the fact that Raya said it. However, plaintiffs are not using the statement for that purpose; they are using it to establish the truth of Jose Luis being asked to do work outside the contract between Simply Right and Cinemark. (*See* ECF No. 148-1 at ¶ 7.) Because this would be inadmissible hearsay, the Court strikes the sentence mentioned *supra* from factual finding 48.

Sixth, Cinemark objects to the findings, on pages 20 to 21 of the R&R, that (1) Clara was not allowed to start cleaning the lobby and restrooms until the public was gone, and (2) Clara was admonished by Cinemark employees for finishing her work as late as 8:30 a.m. (ECF No. 169

at 19-20.) As to the first, the Court agrees that Clara's testimony does not mention lobbies or restrooms, therefore, the Court will not consider the phrase "lobby or restrooms" when considering the R&R. However, Clara's deposition testimony does support the "characterization" that she was not allowed to start cleaning until the public was gone. Clara was asked, "did that mean that you couldn't come and get started until after those movies ended?"; to which Clara responded "[y]es." (ECF No. 123-8 at 61:4-6.) To find that Clara was thus not allowed to start until the movies had finished is a perfectly natural reading of her testimony. As to the second objection, the Court agrees with Cinemark, in part. The Court will consider the evidence as showing Clara testifying that: "one time," Cinemark employees told her that they did not want her to "stay so late" as 8:30 a.m. to finish her work. (ECF No. 134-3 at 66:12-19.)[8]

Seventh, Cinemark objects to the finding, on page 21 of the R&R, that Addendum A to a Janitorial Services Agreement ("JSA") included a list of proposed guidelines provided by Cinemark to Simply Right describing daily and weekly cleaning services. (ECF No. 169 at 20.) Cinemark objects on the ground that this finding "misconstrues" the Addendum, which, Cinemark asserts, is a "scope of work" governing Simply Right's contractual obligations to Cinemark. (*Id.*) The Court disagrees. The R&R simply quotes from language contained in the Addendum in stating that it included a "list of proposed guidelines" provided by Cinemark to Simply Right, and in stating that the guidelines described both daily and weekly cleaning services. (*See* ECF No. 124 at 30-32.)

---

[8] Cinemark asserts that Clara's testimony does not indicate who said this to her. (ECF No. 169 at 19.) The Court disagrees, as her testimony clearly references "Cinemark employees" and then her being told not to stay so late. (ECF No. 134-3 at 66:12-19.) Cinemark also asserts that Clara's deposition testimony in this regard was offered in support of plaintiffs' motion for partial summary judgment. (ECF No. 169 at 19.) However, plaintiffs also cited this testimony in their response statement of undisputed facts with respect to Cinemark's motion for summary judgment. (ECF No. 148-1 at ¶ 14.) Therefore, the Magistrate Judge properly considered it in assessing Cinemark's motion for summary judgment.

Cinemark also asserts that the Magistrate Judge's finding in this regard is "incomplete" because it fails to account for the purportedly undisputed fact that plaintiffs' job duties were set by their Simply Right job description and "Golden Work Rules." (ECF No. 169 at 20.) To the extent Cinemark is asserting that plaintiffs' job duties were set *exclusively* by the job description and "Golden Work Rules," the Court disagrees that the cited evidence supports such an assertion.[9] (*See id*. (citing ECF No. 123-4 at 31-33; ECF No. 164-1 at ¶¶ 12, 71)).

A final matter for discussion at this juncture is certain arguments made in plaintiffs' response. Notably, plaintiffs assert that the Magistrate Judge considered only a "sampling" of plaintiffs' undisputed material facts in finding that Cinemark was not entitled to summary judgment. (ECF No. 173 at 3.) Thereafter, plaintiffs proceed to reference numerous facts that the Magistrate Judge purportedly did not consider, and which plaintiffs assert this Court should consider. (*See id*. at 4-7, 9-13.) This is improper. If plaintiffs wanted this Court to consider facts that the Magistrate Judge purportedly did not consider, then plaintiffs should have filed objections to the R&R, and gone through the same process that the Court just went through with Cinemark's objections to the Magistrate Judge's factual findings. Instead, plaintiffs assert that the Magistrate Judge "got it right." (*See id*. at 8); *see also Sedillo v. Hatch*, 291 F. App'x 883, 885-886 (10th Cir. 2008) (unpublished) (rejecting a party's argument that his response to objections constituted an objection to the report and recommendation). At no point do plaintiffs assert that they are objecting to the Magistrate Judge's factual findings, and, even if they did, any such objection in their response would be untimely, as the response was filed 25 days after entry of the R&R.

---

[9] The Court notes that the issue of plaintiffs' job duties is discussed in more detail *infra*.

As a result, the Court will only consider those facts that the Magistrate Judge relied upon in reaching its decision, as amended by the changes the Court made *supra*.

## V. Objections to the Magistrate Judge's Legal Conclusions

### A. Considering Plaintiffs' Claims Individually

Cinemark's first objection is that the Magistrate Judge purportedly assessed plaintiffs' claims collectively, when the Magistrate Judge should have assessed the claims individually for each non-stayed plaintiff. (ECF No. 169 at 5-7.) Plaintiffs respond that, in its motion for summary judgment, Cinemark did not ask the Magistrate Judge to analyze the evidence as to each plaintiff individually, but, instead, moved for summary judgment against plaintiffs as a group. (ECF No. 173 at 8-9.) Plaintiffs next assert that assessing their claims separately would be "particularly misplaced" in the context of the joint employment inquiry because that inquiry focuses upon the totality of the circumstances for a given set of employees. (*Id*. at 9.) Plaintiffs also assert that the U.S. Supreme Court has "explicitly approved of the use of representative evidence to establish liability in FLSA actions," citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. ___, 136 S.Ct. 1036 (2016).

The Court agrees with the ultimate resolution (although, not with all of its alleged support) sought by Cinemark. The Court first resolves plaintiffs' assertion that Cinemark did not raise this argument before the Magistrate Judge. While the Court agrees that Cinemark's motion for summary judgment is not a model of clarity when it comes to whether plaintiffs' claims should be assessed individually, the Court notes that the motion begins by requesting summary judgment as to plaintiffs' "individual" claims. (*See* ECF No. 123 at 1.) To the extent the motion for summary judgment was unclear, Cinemark's reply makes clear that they sought summary judgment as to plaintiffs' individual claims. (ECF No. 164 at 1, 8-10.) As a result, the Court rejects plaintiffs' argument in this regard.

Next, the important matter to resolve is the substantive issue of whether the facts underlying plaintiffs' claims should be considered collectively or individually. The Court believes they should be considered individually as to each plaintiff, at least under the circumstances here. The case to which plaintiffs cite, *Tyson Foods*, supports this conclusion.[10] In *Tyson Foods*, the Supreme Court was faced with, *inter alia*, the question whether the plaintiffs could rely upon "representative evidence" to show the amount of time the plaintiffs spent donning and doffing certain equipment. *Tyson Foods*, 136 S.Ct. at 1043, 1046. The Supreme Court rejected the request to pronounce a broad rule against the use of representative evidence in class actions. *Id* at 1046. Instead, the Supreme Court held that the permissibility of such evidence turned on "the degree to which the evidence is reliable in proving or disproving the elements of the relevant cause of action." *Id*. With respect to the issue presently before this Court, the Supreme Court notably stated that, "[i]n a case where representative evidence is relevant in proving a plaintiff's *individual* claim, that evidence cannot be deemed improper merely because the claim is brought on behalf of a class." *See id*. (emphasis added). The Supreme Court then explained that one way to show that representative evidence was a permissible method of proving classwide liability was to show that each class member could have relied upon such evidence to establish liability "if he or she had brought an individual action." *Id*. "If the [representative evidence] could have sustained a reasonable jury finding as to hours worked in each employee's individual action, that [evidence] is a permissible means of establishing the employees' hours worked in a class action." *Id*. at 1046-47.

Thus, as plaintiffs assert, the Supreme Court has sanctioned the use of representative evidence in class actions, but it is for the purpose of establishing liability in an individual action, and

---

[10] The Court does not find useful the cases to which Cinemark cites (ECF No. 169 at 6), as they do not address this issue in any detail.

to be used only if it is relevant in proving an individual's claim. Here, plaintiffs make no argument that all of the evidence they wish to use is relevant to proving their individual claims. In fact, plaintiffs do not even explain why the evidence in this case should be considered representative in the sense that the evidence applies equally or, at least, approximately equally to each plaintiff.[11] In many respects plaintiffs' evidence is not. For example, in the R&R, the Magistrate Judge cited testimony from individual plaintiffs as to specific communications they had with Cinemark employees, specific tasks Cinemark employees asked them to do, and specific instances where they were told to finish their work earlier. (ECF No. 168 at 20-21, 23-26.) However, each of these events is specific only to the individual plaintiff to which the event happened. In other words, the events have no relevance to any of the other plaintiffs because they did not happen to them. As such, to the extent the Magistrate Judge effectively aggregated these specific instances of purported work control, that was error, as they only applied to the relevant individual non-stayed plaintiff.

That is not to say, however, that there is not representative evidence in this case. For example, the "guidelines" listed in Addendum A to the JSA govern the performance of Simply Right's services under the JSA. (ECF No. 124 at ¶ 2.2.) Putting aside for now Cinemark's apparent dispute over the applicability of the Addendum, it is "representative" in the sense that it provides guidelines for all of Simply Right's services, including those provided by the non-stayed plaintiffs. The same is true of the Golden Rules and the job description for plaintiffs' jobs. There is no error

---

[11] To be clear, this is not to say that all representative evidence must apply exactly equally to each plaintiff. In the case of statistical evidence that is obviously not the case. *See Tyson Foods*, 136 S.Ct. at 1046. In this case, however, the representative evidence is not statistical in form. As the Supreme Court explained, the use of representative evidence, including statistics, "will depend on facts and circumstances particular to each case." *Id*. at 1049.

in citing to those pieces of evidence and saying that plaintiffs' job duties are this or that, rather than mentioning each plaintiff by name and saying the same thing.

The Court also rejects plaintiffs' apparent policy argument that assessing claims individually is "particularly misplaced" in this context. (*See* ECF No. 173 at 9.) Other than asserting that the joint-employment inquiry focuses upon the "totality of the circumstances," which is undoubtedly true, plaintiffs provide no explanation for why this should mean that the facts underlying their claims should be aggregated. Merely because the analysis focuses upon the *totality* of the circumstances does not mean that the total for a specific plaintiff is made up of all other plaintiffs' alleged circumstances. Instead, under the circumstances of this case and the tests for joint employment proposed by the parties, it should be the totality of circumstances relevant to a particular plaintiff. As explained *supra*, to do otherwise would allow evidence to be considered that is irrelevant to a specific plaintiff's claims. And there is no policy argument that can favor the consideration of irrelevant evidence.

As such, going forward, to the extent that evidence is representative of each non-stayed plaintiff's work, the Court will consider it as being relevant to said plaintiff's claims. To the extent the evidence is not representative, though, it will only be considered as relevant to the specific plaintiff to whom it applies. To be clear, therefore, the non-stayed plaintiffs' claims will be assessed individually.

**B.      The Applicable Test for Assessing Joint Employment**

The parties advocated two different tests for assessing whether Cinemark was a joint employer for purposes of the FLSA. Cinemark requested that a four-factor test set forth in *Bonnette v. California Health & Water Agency*, 704 F.2d 1465 (9th Cir. 1983), be used. (ECF No. 123 at 4-5.)

Plaintiffs advocated for a test "drawn from various circuits' case law" that purportedly included three of the four *Bonnette* factors, as well as five other factors. (ECF No. 148 at 4-5.) Both parties, however, ended up assessing all of the *Bonnette* factors, as well as many other factors. (ECF No. 123 at 5-19; ECF No. 148 at 5-13.) Perhaps understandably, therefore, the Magistrate Judge also assessed a number of factors that could "reasonably apply" to the circumstances here. (*See* ECF No. 168 at 19.) As such, the Court sees little error in the Magistrate Judge considering factors outside the *Bonnette* test, given that the parties spent so much of their briefing discussing those additional factors. As for Cinemark's objection that the additional factors were "irrelevant," this is sharply undermined by Cinemark spending more time bringing those factors to the Magistrate Judge's attention in its motion for summary judgment (and relying upon them), than it did addressing the *Bonnette* factors. (*See* ECF No. 123 at 5-19.)[12]

As a result, the Court will not disturb the factors considered by the Magistrate Judge because the Court does not find Cinemark's objection to be well-taken.[13]

---

[12] The Court also rejects Cinemark's objection that the Magistrate Judge relied upon a regulation from the Department of Labor. (ECF No. 169 at 12.) Although the Magistrate Judge cited the regulation, and stated that it would focus its analysis pursuant to one part of the same, the R&R's actual analysis reflects that the Magistrate Judge relied upon the *Bonnette* factors and other factors argued by the parties. (*See* ECF No. 168 at 19-31.) Notably, the Magistrate Judge does not cite the regulation again, and does not cite it at all in the R&R's analysis section. (*See id.*) Therefore, to the extent consideration of the regulation was error, which the Court does not decide, its mention in the R&R did not prejudice Cinemark.

[13] If the Court were writing on a clean slate, it would likely not adopt either test advocated by the parties. Instead, the Court likely would be persuaded to adopt the test recently pronounced by the Fourth Circuit Court of Appeals in *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (2017). The Court is inclined to do so because it agrees with the Fourth Circuit that the test set forth in *Salinas* focuses upon the relevant relationship—"the relationship between the putative joint employers"—as opposed to the relationship between the employee and the putative employers. *Salinas*, 848 F.3d at 142. As the Fourth Circuit explained, the latter relationship is still part of the inquiry, but it is distinct from the former and addressed separately. *Id.* at 142-143. However, the Court chooses not to take this approach in this case, not least because *Salinas* was decided after Cinemark's motion for summary judgment was filed. Moreover, although plaintiffs cite to *Salinas* in their response to Cinemark's objections (ECF No. 173 at 2 n.2, 14, 15 n.10, 17), they persist in advocating for their self-made "modern test of joint employment" (*id.* at 15-16),

## C. The Magistrate Judge's Assessment of Joint Employment

The Magistrate Judge initially found that three of the four *Bonnette* factors weighed against plaintiffs. Specifically, the Magistrate Judge found that there were no genuine issues of material fact that Cinemark did not (1) have the power to hire or fire plaintiffs; (2) determine the rate and method of plaintiffs' payment; and (3) maintain plaintiffs' employment records. (ECF No. 168 at 19.) No objection has been made to those findings. Keeping to factors that the Magistrate Judge found weighed against a finding of joint employment, the Magistrate Judge found that (1) Cinemark was not Simply Right's only contractor, and (2) plaintiffs would not continue to work at the Greeley theater if the JSA was terminated. (*Id*. at 28-30.) No timely objection has been raised to these findings.[14] The Magistrate Judge also found that one factor—whether plaintiffs engaged in specialty work—was neutral. (*Id*. at 31.) No timely objection has been made to this finding either.[15]

_____

which ignores the test established in *Salinas*. As such, the Court has received no argument as to how the facts of this case mesh with the *Salinas* test. Moreover, the way the parties have presented their facts and arguments is within the framework of Cinemark's relationship with the non-stayed plaintiffs, rather than Cinemark's relationship with Simply Right. The Court would, thus, be writing on a blank slate, which it does not believe would be appropriate, and will not do on this occasion. In addition, adoption of *Salinas* may very likely alter the Court's assessment of whether facts can be considered collectively, at least for purposes of the joint-employer analysis, because the *Salinas* test appears to find relevant all of the circumstances between putative employers, even if they only occurred on one occasion or applied to only certain plaintiffs. *See Salinas*, 848 F.3d at 145-147. Plaintiffs, though, do not make that argument, and, as noted, frame their arguments in terms of the relationship between an employee and the putative employer. With all of this being said, however, it provides further reason for why the Court does not believe Cinemark's objection, as to the test used for establishing joint employment, to be well-taken.

[14] Plaintiffs appear to make an argument in their response contrary to the Magistrate Judge's finding that Cinemark was not Simply Right's only contractor, in that plaintiffs assert that this factor looks at whether the *plaintiffs* had a business that could shift from one employer to another. (*See* ECF No. 173 at 17-18.) Plaintiffs do a similar thing with respect to whether responsibilities under the JSA could pass from one subcontractor to another. (*See id*. at 18.) Plaintiffs do not assert that they are objecting to the R&R in these regards, even though the Magistrate Judge found, with respect to one of these factors, that plaintiffs' interpretation was "unsupported by the law" (ECF No. 168 at 29), and, as explained *supra*, even if they did frame their arguments as objections, they would be untimely. Therefore, the Court considers the Magistrate Judge's findings in this regard to be undisputed.

[15] As discussed in the preceding footnote, plaintiffs again attempt to do an end-run around objecting to the R&R by simply making an argument contrary to the Magistrate Judge's findings without framing the

The Magistrate Judge did find, however, that one of the *Bonnette* factors—supervision and control over employee work schedules and conditions of employment—could not be resolved in Cinemark's favor. (ECF No. 168 at 20-28.)[16] It is evident from the R&R that it was this factor that resulted in the Magistrate Judge recommending to deny Cinemark's motion for summary judgment. (*See id*. at 31-33.) As such, the Court focuses its attention on the same.

The Magistrate Judge first considered plaintiffs' work schedules. (*Id*. at 20-21.) The Magistrate Judge found that, for purposes of summary judgment, Cinemark controlled plaintiffs' work schedules for the following reasons. Raya testified that, based upon movie schedules, Cinemark managers notified her about the time they would like the cleaners to start work. (*Id*. at 20.) Maribel and Nazario, knowing Cinemark's requirement that the theater needed to be cleaned by 10:30 a.m., arrived at work between 5:00 and 5:30 a.m. based on various factors. Clara was not allowed to start cleaning until the public was gone. (*Id*.) Clara was admonished by Cinemark employees for staying as late as 8:30 a.m. to finish her work. (*Id*. at 21.) Jose Luis was directed by a Cinemark employee to finish cleaning the theater by 8:00 a.m. each day, and, on other occasions, he was told to stay because the theater was not right. (*Id*.)

---

argument as an objection. (*See* ECF No. 173 at 19-20.) For the reasons already stated herein, the Court will not allow this.

[16] The only other factor that the Magistrate Judge found weighed in favor of Cinemark being a joint employer was that plaintiffs' work was "integral" to Cinemark. (ECF No. 168 at 29-30.) The Court agrees with the Magistrate Judge. However, the Magistrate Judge does not appear to have placed any weight on this factor in summarizing the reasons for denying Cinemark's motion for summary judgment, as it is not mentioned in that summary. (*See id*. at 31-32.) As discussed in more detail *infra*, the Court does not disagree with the Magistrate Judge's decision to place little or no weight on this factor. (*See id*. at 29-30.) For that reason, the Court again points out that Cinemark's objection to the Magistrate Judge's formulation of the joint -employer test does not appear to be well-taken. The Magistrate Judge's summary of the relevant factors demonstrates that the only factor weighing against Cinemark was a *Bonnette* factor. (*See id*. at 32.) All of the other factors from outside *Bonnette*, and summarized as relevant to the Magistrate Judge's analysis, weighed *in favor* of Cinemark. (*See id*. at 31-32.)

The Court does not find these facts sufficiently show that Cinemark had control over plaintiffs' work schedules. The important thing to note in this regard is that the JSA provided that Simply Right would perform cleaning services between "box office close and two hours prior to theatre opening …." (ECF No. 124 at 32.) All but a few of the facts upon which the Magistrate Judge relied are entirely consistent with this broad time frame for plaintiffs to perform their work. In other words, the Court does not find such a broad time frame for when plaintiffs could start and finish their work to constitute "control" for purposes of this test. Clara's testimony that she was not allowed to start work until the public was gone is entirely consistent with the broad time frame set forth in the JSA. Simply because she could not permissibly start work until after the public had gone, does not mean that Cinemark controlled when she could actually start. Maribel's testimony affirms this.

Contrary to the Magistrate Judge's finding, Maribel did not testify that knowing the theater needed to be clean by 10:30 a.m. affected her decision when to begin. Rather, Maribel testified that it "didn't matter whether we arrived in the morning or at night," as long as the theater was clean by 10:30 a.m. (ECF No. 123-10 at 18:20-23.) Maribel further testified that her decision on whether to begin working in the morning or the evening was based, for weekends, on wanting to spend time with her children, and, during the week, on whether Nazario needed to get to his other work. (*Id*. at 54:8-18.) In other words, the decision on when to start was not based upon the knowledge that the theaters had to be clean by 10:30 a.m.; instead it was a decision based on purely personal factors. As such, Maribel's testimony, if anything, undermines the contention that Cinemark controlled plaintiffs' work schedules because Maribel's testimony shows that she could decide when to start,

with this decision being affected by Maribel's personal circumstances, rather than the dictates of her job.

As for Clara and Jose Luis' testimony that they were told, respectively, to finish work before 8:30 a.m. or by 8:00 a.m., that does not mean Cinemark had control over their work schedules, at least not in the context of the broad time frame the JSA provided for the work to be completed. Raya's testimony that Cinemark managers sent her emails for when they wanted individuals to start cleaning is somewhat more troubling, but when read in context, it does not suggest any greater degree of control over plaintiffs' work schedules. Notably, Raya immediately then affirmed that there was no set time for when individuals had to begin work, and further testified that Cinemark managers told individuals they could not start working because movies were still playing. (ECF No. 134-6 at 110:21-111:11.) Read in context, this testimony indicates that Cinemark managers were not sending Raya emails instructing her on when individuals could begin work, but, rather, telling her the times that individuals could not start work because the theater would still be open. This is again consistent with the broad time frame allowed under the JSA. Finally, Jose Luis' testimony, that he was told to stay because he had not done work right, does not indicate any meaningful degree of control over his work schedule. It may indicate a degree of control over the performance of his work, but asking him to satisfactorily do his work has only an incidental affect on his work schedule.

As a result, the Court finds that the facts upon which the Magistrate Judge relied upon to find Cinemark exercised some degree of control over plaintiffs' work schedules to be insufficient for that purpose.

The Magistrate Judge next considered plaintiffs' work responsibilities. (ECF No. 168 at 21-25.) The Magistrate Judge found, for purposes of summary judgment, that Cinemark exercised

18

some degree of control over plaintiffs' work responsibilities for the following reasons. Addendum A to the JSA included a list of "guidelines," describing daily and weekly cleaning services needed for the theater. (*Id*. at 21-23.) Raya testified that two to three times during her employment with Simply Right, Cinemark managers asked cleaners to accompany the manager and Raya on inspection walk-throughs. (*Id*. at 23.) Jose Luis testified that Cinemark managers identified problem areas that needed more attention, and instructed him to move some video games and what chemicals to use on the video games. Jose Luis was asked to clean the cup-area and window displays, and move the popcorn machines. Jose Luis was also told to start folding carpets in the lobby. Clara testified that she rarely saw or communicated with Simply Right supervisors, and a Cinemark manager was "more likely to solve our problems." (*Id*.) Clara testified that a Cinemark manager told Jose Luis to clean the toilets better. (*Id*. at 23-24.) A Cinemark manager instructed Clara to dust high areas in the bathrooms, to clean ice-melting salt, and clean trash cans to the bottom. (*Id*. at 24.) Maribel testified that Cinemark employees checked her work, and, if there was something they did not like, told Maribel to go back and finish cleaning. On one occasion, a Cinemark manager told Maribel to use another chemical in a room to remove the smell of vomit. On one other occasion, a Cinemark manager asked Maribel to interpret instructions to two other cleaners. A Cinemark manager also once told Maribel that she needed to clean gum off of the floor, and there were unclean seats that needed cleaning. (*Id*.)

The Court agrees with the Magistrate Judge that these facts indicate some degree of control over plaintiffs' work responsibilities/duties. The Court places the greatest emphasis on Addendum A to the JSA. Contrary to Cinemark's objection, the Court does not find the JSA to be a "scope of work" whose "translation" was set by Simply Right's job description. To the extent that the JSA can

be considered a "scope of work," it was Addendum A's "guidelines" that dictated its translation. That much is clear from the text of the JSA, which states that Simply Right agreed to provide the services described in Addendum A. (ECF No. 124 at ¶ 2.2.) To suggest that those described services did not then, in turn, dictate the services Simply Right asked plaintiffs to perform is simply disingenuous. Put another way, Cinemark cannot demand a long list of services that it wants Simply Right to perform, and then absolve itself of being responsible for the setting of those services when Simply Right turns around and requires individuals to perform them. Such an argument simply ignores the "economic realities" of Cinemark's relationship with Simply Right and plaintiffs.

That much is shown by the similarities in the services listed in Addendum A and those listed in plaintiffs' job description and/or "Golden Work Rules." The services listed in Addendum A are quoted in pertinent part in the R&R. (ECF No. 168 at 21-23.) The job duties listed in the description for plaintiffs' jobs (ECF No. 123-4 at 31-33) substantially mirror or, at the very least, maintain consistency with the services in Addendum A. Some of the similarities are obvious. For example, Addendum A requires that all windows under 8 feet be spot cleaned; an identical job duty is listed in the job description. (*Compare* ECF No. 124 at 31, *with* ECF No. 123-4 at 31.) Other job duties may not be so specifically identical, but it can still be inferred, at least for summary judgment purposes, that they take direction from Addendum A. (*Compare* ECF No. 124 at 30-32, *with* ECF No. 123-4 at 31-32 (e.g., cleaning of restrooms, mopping of floor surfaces, sweeping auditoriums, emptying and cleaning trash cans, cleaning doors, dusting of lights and vents)). There are certainly some discrepancies between the two lists. For example, Addendum A states that any found articles must be placed in an area designated by Cinemark, whereas the job description states that a supervisor should be notified of any items left in a theater. (*Compare* ECF No. 124 at 31, *with* ECF

No. 123-4 at 32.) However, for purposes of summary judgment, a rational factfinder could find that the job duties set in plaintiffs' job description were derived from the services required under Addendum A. In turn, the Court, thus, finds that it could be inferred that plaintiffs' job duties were controlled, at least in part or jointly, by Cinemark.

Moreover, it is in this context that the instances cited in the R&R of communications or interactions between Cinemark employees and plaintiffs with respect to plaintiffs' work performance must be viewed. (*See* ECF No. 168 at 23-24.) In other words, although the Court agrees with Cinemark that the number of alleged instances of communications between Cinemark employees and plaintiffs appears to be low in light of the time span that plaintiffs worked at Cinemark's theater (*see* ECF No. 169 at 7-11 (asserting that Nazario worked at a Cinemark theater for 388 days, Maribel worked at a Cinemark theater for 13 months, and Clara and Jose Luis worked at a Cinemark theater for 2 years); *see also* ECF No. 173 at 10-13 (not responding to the length of plaintiffs' work periods at Cinemark theaters)), during the entire length of plaintiffs' work at the Cinemark theater they were subject to the job duties derived from Addendum A. Thus, while the Court may agree that the number of specific interactions between plaintiffs and Cinemark employees may be low in context (and, in Nazario's case, almost to completely non-existent), that does not turn this factor in Cinemark's favor in light of the continuing presence of the services required by Cinemark pursuant to the JSA's Addendum A.

As a result, like the Magistrate Judge, the Court finds that, for purposes of Cinemark's motion for summary judgment, this factor weighs in favor of joint employment. To what extent it weighs in favor is discussed in more detail *infra*.

The Magistrate Judge finally considered plaintiffs' work conditions. (ECF No. 168 at 25-26.) The Magistrate Judge found, for purposes of summary judgment, that Cinemark exercised some degree of control over plaintiffs' work conditions because plaintiffs worked at no business other than Cinemark's theater in Greeley, Cinemark was responsible for purchasing the cleaning supplies used by plaintiffs, Maribel was told to ask "the movie people" if she needed cleaning supplies, on one occasion Maribel interpreted a Cinemark manager's instructions to two other workers, Jose Luis testified that he had more contact with Cinemark's managers, a Cinemark manager told Jose Luis what chemicals to use to clean a video machine, and Clara testified that a Cinemark manager was more likely to solve her problems. (*Id*. at 25-26.)

Cinemark's objections to these findings are meager at best. Essentially, Cinemark asserts that this Court should reject the Magistrate Judge's findings because another court has found that it would be "quite unusual" for a service provider to never have contact with its client. (*See* ECF No. 169 at 15-16.) Cinemark also asserts that the Magistrate Judge did not cite any other cases that consider the issues relied upon in the R&R for purposes of this factor. (*Id*. at 16.) Cinemark's objections are simply inadequate. First, simply asserting that the Magistrate Judge did not cite other cases does not explain why the issues considered are irrelevant to the analysis of this factor. Second, merely because another court has not found contact between a putative employer and employee to be unusual, that does not make it so under the facts of this case. This is especially so to the extent that it shows some degree of control over work conditions, and particularly with respect to Jose Luis and Clara who, the Magistrate Judge found, testified that, respectively, they had more contact with Cinemark employees or Cinemark employees were more likely to solve problems.

Put simply, as the Magistrate Judge found, there was some degree of control over plaintiffs' work conditions here. The more important issue is whether that degree of control, along with the other elements of control or the lack thereof discussed *supra*, was sufficient to create a genuine issue of material fact as whether Cinemark jointly employed plaintiffs.

With respect to that issue, the Magistrate Judge found that the disputed facts demonstrated Cinemark had sufficient indicia of control over plaintiffs' work to weigh in favor of joint employment. (ECF No. 168 at 27-28.) The Magistrate Judge found that Cinemark managers began to assign tasks to plaintiffs, Cinemark determined times plaintiffs could start and finish their work, plaintiffs were told to report to Cinemark managers with problems or questions, and plaintiffs believed that their work was properly supervised by Cinemark. (*Id*.)

Cinemark objects to these findings, principally, on the basis that the Magistrate Judge purportedly "lost sight" of the totality of the circumstances. (ECF No. 169 at 16.) Cinemark asserts that it does not hire, fire, train, discipline, or pay Simply Right's workers. Cinemark further asserts that plaintiffs decided when to begin and end work, plaintiffs decided how to divide up the work amongst themselves, and plaintiffs were only rarely, if ever, given specific directions from Cinemark managers. (*Id*.)

The Court agrees with Cinemark, at least to the extent that the Court finds that there is insufficient evidence to create a genuine issue of fact with respect to whether Cinemark controlled plaintiffs' work such that Cinemark jointly employed plaintiffs. As an initial matter, the Court agrees with the Magistrate Judge that no multi-factor test should be decided simply by adding up the number of factors that fall on each side of the ledger. (*See* ECF No. 168 at 32.) That is no way to decide a case. The Court also agrees that, in some cases, a small collection of factors may so

persuasively show a joint employment relationship that how the other factors fall may be irrelevant. But, that is not the case here.

Here, the fact that weighs in favor of all plaintiffs is that plaintiffs' work duties were arguably set in large part by Addendum A; in other words, in large part by Cinemark. This is no small fact. But it is not enough, at least not when faced by the countervailing force of the facts stacked against finding a joint employment relationship. As the Magistrate Judge found, there is no evidence that Cinemark had the power to hire or fire plaintiffs, set the rate or method of their pay, or maintain their employment records. (ECF No. 168 at 31.) Added to this, the Court finds that Cinemark did not have sufficient control over plaintiffs' work schedules. As discussed *supra*, although the permissible start and end points were set by Cinemark, in between these broad points plaintiffs could exercise their own discretion as to when they started and finished working. The Court does not find this to be sufficient control over plaintiffs' work schedules to suggest that Cinemark was plaintiffs' joint employer.

The Magistrate Judge also found that Cinemark began to assign specific tasks to plaintiffs. As an initial matter, this is not true of Nazario. There are no facts found in the R&R to show that Nazario was assigned specific tasks by Cinemark. (*See* ECF No. 168 at 8-9, 21-26.) As for the other plaintiffs, the Magistrate Judge does find instances of specific tasks being assigned to plaintiffs, or, at least, specific instructions being given to plaintiffs on how to complete their tasks. (*See id*. at 21-26.) However, the Court finds it important the length of time these plaintiffs worked at the Cinemark theater and the number of instances of direction from or interaction with Cinemark employees. As mentioned *supra*, Cinemark asserts, without response from plaintiffs, that Maribel worked at a Cinemark theater for 13 months, and Clara and Jose Luis worked at a Cinemark theater

for 2 years.  (*See* ECF No. 169 at 8-11; ECF No. 173 at 10-13.)  Cinemark further asserts that Maribel and Jose Luis had a "handful" of interactions with Cinemark employees, while Clara testified that her interactions happened about five times each.  (ECF No. 169 at 8-11.)  These characterizations are largely borne out by the facts found in the R&R.

Notably, the Magistrate Judge refers to only a limited number of events with respect to each plaintiff.  (*See* ECF No. 168 at 23-26.) For Maribel, it is Cinemark employees checking her work and telling her to complete it if they were unhappy, a Cinemark manager telling her to clean a room that smelled of vomit, a Cinemark manager asking her to interpret instructions to other workers, and her being told to ask the "movie people" for cleaning supplies.  (*Id*. at 24-26.)  Over the course of working at the Cinemark theater for 13 months, the Court does not find that these limited interactions create a genuine issue of material fact with respect to Maribel being jointly employed by Cinemark.  Even if the Court were to accept the arguably more expansive recitation of interactions in plaintiffs' response statement of facts (*see* ECF No. 148-1 at ¶ 44), this would still not rise to the level of control necessary.

In one of the cases plaintiffs rely upon for their "modern test" of joint employment, *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61 (2d Cir. 2003) (*see* ECF No. 173 at 15 n.10), the Second Circuit Court of Appeals explained that "*extensive* supervision of a plaintiff's work is indicative of an employment relationship…only if it demonstrates effective control of the terms and conditions of the plaintiff's employment." *Id*. at 74-75 (emphasis added, citation omitted).  Here, the evidence Maribel relies upon founders at the first beachhead—*extensive supervision*.  As discussed, the limited number of interactions over the course of 13 months does not demonstrate extensive supervision.  Notably, apart from asserting that Cinemark provided instructions as to "minute

details" of work (ECF No. 173 at 1), plaintiffs do not provide a reasoned argument otherwise (*see generally id.*).

Even if somehow Cinemark did minutely control plaintiffs' work details, plaintiffs also fail to explain how that resulted in effective control of the terms and conditions of their employment, at least when that phrase is understood in light of the Second Circuit's later explanation that "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *See Zheng*, 355 F.3d at 75. Here, many of the alleged instances of control relate to Cinemark employees ensuring that Simply Right (by way of its workers) provided the services that it had contracted to provide. (*See* ECF No. 124 at § 2.2.) As such, rather than resulting in effective control of plaintiffs' employment, Cinemark was ensuring effective compliance with the JSA.

For Clara, the Magistrate Judge relied upon Clara's testimony that a Cinemark manager was "more likely" to solve her problems, a Cinemark manager instructed her to dust the high area in bathrooms, clean ice-melting salt, clean lint stuck in the corners of bathrooms, and clean trash cans to the bottom, and a Cinemark manager complained about a chemical in the toilets. (ECF No. 168 at 23-24, 26.) Clara worked at a Cinemark theater for two years. The Court simply does not find these interactions between Cinemark employees and Clara over that period of time to give rise to a joint employment relationship. Even if the Court were to again consider the arguably more expansive set of facts alleged in plaintiffs' response statement of facts (*see* ECF No. 148-1 at ¶ 69), they do not overcome the need for *extensive* supervision and a resulting effect on the control of

Clara's terms and conditions of employment. This is especially so where, as here, the vast majority of the alleged interactions relate to ensuring satisfaction of the JSA.

For Jose Luis, the Magistrate Judge relied upon: Cinemark managers identifying problem areas that needed more attention; a Cinemark manager instructing Jose Luis to move video games, where to move them, and chemicals to use to avoid damaging the games; Cinemark managers telling Jose Luis what areas to concentrate upon during inspections; a Cinemark manager telling Jose Luis to clean the cup area; Jose Luis being told to move the popcorn machines; when Jose Luis was visiting the theater with his family, him being told to fold the carpets before he finished his work; and Jose Luis testifying that he had more contact with Cinemark managers. (ECF No. 168 at 23, 26.)

The facts with respect to Jose Luis are the closest of the non-stayed plaintiffs, at least with respect to the *degree* of control over Jose Luis' work. In a vacuum, there are instances of specific direction, and, allegedly, instructions to perform acts that the JSA may or may not have required. However, to the extent that this can be described as "begin[ning] to assign specific tasks," as the Magistrate Judge appears to have found (*see* ECF No. 168 at 27-28), the Court does not believe that it demonstrates sufficient indicia of control for purposes of joint employment in the overall context of Jose Luis' work.

Specifically, the context of Jose Luis having worked at a Cinemark theater for two years. At any point during that time period, Cinemark could have begun to assign tasks to Jose Luis, and apparently, its employees did. Perhaps, if Cinemark had begun assigning tasks from the near get-go of Jose Luis' work, and continued assigning or renewing the assignment of tasks unabated from thereon, the assignment of tasks could be considered a key factor in whether Cinemark was Jose Luis' joint employer. But that it not what the facts show here. The mere fact that some tasks were

assigned to Jose Luis during his two-year period of work at the Cinemark theater demonstrates no more than that Jose Luis worked at the theater for a long time. In other words, the assignment of tasks is purely a natural consequence of this lengthy period; it does not in this case demonstrate that Cinemark had sufficient indicia of control of Jose Luis' work. Put simply, all things with respect to this analysis are contextual, and, here, the context of Jose Luis' work is that he was assigned tasks over a two-year period of working at a Cinemark theater. For purposes of this case, the Court does not find that to be a sufficient degree of control or, on a wider plane, of joint employment to create a genuine issue of material fact under the tests proposed by the parties.[17]

The Magistrate Judge's consideration of other factors (*see* ECF No. 168 at 28-31), does not change the Court's analysis. If anything, those additional factors put Cinemark further away from being a joint employer than closer. The only factor that the Magistrate Judge found weighed in favor of joint employment was the fact that plaintiffs' work was integral to Cinemark. (*Id*. at 29-30.) The Court agrees with the Magistrate Judge that plaintiffs' work was integral to Cinemark—a movie theater needs to be clean for the theater to be usable. However, the Court does not find this factor at all relevant to the joint employment analysis. As the Magistrate Judge indicated, this factor could be implicated in most situations. (*Id*.) For example, Cinemark may call in a contractor to come and fix a broken projection system or screen in one of its theaters. The screen or projection system is

---

[17] The Court notes that its analysis may very well have been different under *Salinas*, which, *inter alia*, looks at whether the putative joint employers *allocate the power* to direct such things as controlling a worker. *See Salinas*, 848 F.3d at 141-142. Arguably, the JSA here allocates between Cinemark and Simply Right the power to do a host of things with respect to individuals hired to clean in Cinemark's theaters. (*See* ECF No. 124 at ¶ I.) That, however, is not the issue before the Court today, nor will it be the issue before the Court on any other day in this case, as, although *Salinas* was decided after the filing of plaintiffs' response to Cinemark's motion for summary judgment, plaintiffs could have easily argued that the Court should have looked at the relationship between the putative joint employers. Instead, plaintiffs have chosen to argue, and continue to do so, that the appropriate test should focus on the relationship between the employer and the employee. (*See* ECF No. 173 at 15-16.) It is too late to turn back now.

undoubtedly integral to Cinemark, but that does not make Cinemark the contractor's joint employer. Put simply, there is no reason why work being integral is more likely to result in an employment relationship, than the lack of one. Therefore, the Court places no weight on this factor.

Other than the integral nature of plaintiffs' work, none of the additional factors weighed in their favor, and the Magistrate Judge found that two weighed against them. (ECF No. 168 at 28-31.) Although plaintiffs appear to re-argue certain of those factors in their response to Cinemark's objections (*see* ECF No. 173 at 17-18), as noted *supra*, plaintiffs have not raised these arguments as objections, and, even if they did, they would be untimely. Therefore, the Court considers the Magistrate Judge's findings with respect to these factors to be undisputed, and does not disturb them.

Adding those factors to the totality of the other circumstances found herein and, to the extent undisturbed, in the R&R, the Court is left with the firm impression that Cinemark was not the joint employer of any of the non-stayed plaintiffs. Although, as explained, Cinemark had some control over plaintiffs' job duties, and (to varying degrees) plaintiffs interacted with Cinemark employees concerning their work, the Court finds that insufficient facts support a finding of joint employment under the totality of the circumstances in this case.

## VI. Conclusion

For the reasons set forth herein, the Court:

(1)     SUSTAINS IN PART Cinemark's objection to the R&R (ECF No. 169);

(2)     ADOPTS IN PART and REJECTS IN PART the R&R (ECF No. 168);

(3)     GRANTS Cinemark's motion for summary judgment (ECF No. 123), with respect to the individual claims of the non-stayed plaintiffs against Cinemark; and

(4)     DENIES IN PART and DENIES WITHOUT PREJUDICE IN PART plaintiffs' motion for partial summary judgment (ECF No. 134).

**SO ORDERED.**

DATED this 22nd day of May, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge