IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 15-cv-00974-RM-MEH

AURELIO SANCHEZ, *et al.*

        Plaintiffs,

v.

SIMPLY RIGHT, INC., *et al.*

        Defendants.

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Named Plaintiffs Aurelio Sanchez, Domingo Sanchez, Miguel Angel Godoy, Jose Luis Arreola, and Clara Arreola ("Named Plaintiffs"),[1] opt-in Plaintiffs Nazario Arreola, Maribel Arreola, and Armida Raya ("Opt-In Plaintiffs") (Named and Opt-In Plaintiffs collectively, "Plaintiffs") and Defendants Simply Right, Inc., Daniel Kilgore, and Beatrice Permann ("Defendants"), through their undersigned counsel, jointly move the Court for approval of their settlement agreement.

**I. INTRODUCTION**

Plaintiffs filed this Section 216(b) collective action on May 7, 2015 against Defendants and against and Cinemark USA, Inc., alleging failure to pay minimum wages and overtime in violation of the Fair Labor Standards Act ("FLSA"). Plaintiffs were employed by or contracted with Simply Right to provide janitorial services at Cinemark theatres in Colorado, or they

---

[1] The claims of Named Plaintiffs Daniel Hernandez and Benita Arreola were resolved through private arbitration in 2016 and they have separately stipulated to dismissal of their claims from this action.

contend that they helped a Simply Right employee/contractor with cleaning. Plaintiffs allege they were not paid minimum wage for all hours of work and were not paid overtime at 1.5 times their regular rate of pay for hours worked over 40 per week.

On May 22, 2017, the Court granted Cinemark's motion for summary judgment, dismissing Cinemark from the action. Also on May 22, 2017, the Court granted conditional certification to a nationwide class of Simply Right workers who cleaned Cinemark theatres outside California since May 5, 2012.

Subject to Court approval, the parties have agreed to settle this action on a class basis for a total payment of $225,000.00, inclusive of attorney's fees. This settlement is the result of extensive negotiations between the parties, including two settlement conferences with Magistrate Judge Hegarty, and was entered into after more than two years of litigation involving extensive discovery, the production of over 15,000 pages of documents, 12 depositions, and briefing on class certification and the merits. As discussed herein, the parties respectfully submit that the settlement satisfies all of the criteria for approval. To effectuate the settlement and distribute funds to class members, the parties request that the Court (1) grant approval of the Settlement Agreement (attached as Exhibit A); and (2) approve the proposed Notice of Settlement (attached as Exhibit B).

## II. STATEMENT OF FACTS

### A. Procedural and Litigation History

Plaintiffs contend that they worked for Simply Right cleaning Cinemark theatres in Colorado over various timeframes between May 2012 and the present. Some Plaintiffs were employees or independent contractors of Simply Right while other Plaintiffs allege that they

accompanied their family members or friends to the theatres and helped clean. These "helpers" were not paid separately by Simply Right, which Plaintiffs allege caused their pay to fall below minimum wage in certain workweeks. Plaintiffs also allege they worked over 40 hours in certain workweeks but were not paid for their hours over 40 at 1.5 times their regular rates of pay.

Named Plaintiffs filed their Complaint on May 7, 2015. Nazario and Maribel Arreola filed their consents to join the action on May 14, 2015, and Armida Raya filed her consent to join the action on July 17, 2015. Defendants moved to dismiss or stay the claims of certain Plaintiffs pursuant to arbitration agreements with Simply Right. After the motion was fully briefed but before the Court ruled, the parties agreed to arbitrate and stay the claims of all the Plaintiffs other than Named Plaintiffs Jose Luis Arreola and Clara Arreola, and Opt-In Plaintiffs Nazario Arreola and Maribel Arreola.

The parties thoroughly investigated their claims and defenses. Counsel for Defendants interviewed managers of Simply Right and Cinemark as well as Simply Right janitors in Colorado and at a sampling of other locations across the country. Defendants obtained 18 declarations from workers at 10 theatres in eight states. Plaintiffs' counsel worked with the ten Plaintiffs and other non-party Simply Right janitors and supervisors to gather evidence and affidavits in support of the class claims. To facilitate investigation of the nationwide class claims, the Court ordered Defendants to provide Plaintiff's counsel with contact information for janitors from a sampling of 5 states around the country. Defendants produced contact information for 124 current and former janitors. Plaintiffs' counsel interviewed all janitors for whom the contact information was current and obtained declarations from workers in each sampled state. Defendants deposed four of those putative members of the 216(b) collective. The parties

conducted extensive discovery, including written discovery resulting in the production of over 15,000 pages of documents, depositions of each of the Named and Opt-In Plaintiffs, and a 30(b)(6) deposition of Simply Right.

In November 2016, Cinemark and Plaintiffs filed cross motions for summary judgment as to whether Cinemark was a joint employer of Plaintiffs. On May 22, 2017, the Court granted Cinemark's motion for summary judgment, dismissing Cinemark from the action.

On November 9, 2016, Plaintiffs moved under Section 216(b) for conditional collective action certification of a nationwide class of Simply Right janitors. After a stay in briefing for additional discovery, Defendants responded on January 20, 2017, and on May 22, 2017, the Court conditionally certified a nationwide class of Simply Right janitors who cleaned Cinemark theatres outside California since May 5, 2012. The parties agreed on a form of notice that complied with the Court's conditional certification order and filed it with the Court, but agreed to make another attempt to resolve the case prior to issuing notice to the class.

Plaintiffs filed an initial motion to toll the statute of limitations on July 28, 2016, which was granted for a period of just over one month, June 28, 2016 through August 30, 2016, but otherwise denied. Plaintiffs filed a renewed tolling motion on April 28, 2017, on which the Court has not ruled. In conjunction with this Motion, Plaintiffs are withdrawing their renewed tolling motion. Therefore, the applicable limitations period for class members will be three years and 33 days prior to the date on which notice is sent.

B.     **Background of Settlement Negotiations**

The parties held an initial settlement conference with Judge Hegarty on June 14, 2016 but were unable to reach resolution. After receiving the Court's rulings on summary judgment and

conditional certification, the Simply Right Defendants and Plaintiffs set a supplemental settlement conference for July 25, 2017. However, because of uncertainty surrounding Simply Right's revenue stream, due to the loss of contracts with certain cinemas, the parties vacated that settlement conference. The parties continued to confer informally about potential resolution in light of Simply Right's financial condition and ultimately rescheduled the settlement conference with Judge Hegarty for August 31, 2017. Working with Judge Hegarty, an experienced and well-respected settlement judge, the parties agreed to the settlement set forth in the Settlement Agreement.

In sum, as a result of extensive discovery, investigations, and motions practice, the parties were well-versed in the facts and law when they negotiated settlement. The proposed settlement is the product of two fully informed sides negotiating at arm's length. The parties believe that the settlement offers a fair and reasonable resolution of this litigation, especially given the risks each party faces in post-conditional certification discovery and a motion for decertification, trial and potential appeals, and in light of Simply Right's financial condition and likely future ability to pay.

### III.  THE SETTLEMENT TERMS

#### A.  The Class Definition

The Notice of Settlement defines the settlement class as those individuals who worked for Simply Right cleaning Cinemark movie theatres outside California, as well as any non-employees those individuals brought with them to help them clean, for three years and 33 days prior to the date on which the Notice of Settlement is mailed. Because the maximum statute of limitations in FLSA actions is three years, and the Court has tolled the statute of limitations for

an additional 33 days, three years and 33 days is the maximum recovery period for class members. For the avoidance of doubt as to whether any additional tolling may apply, Plaintiffs are withdrawing their pending second tolling motion contemporaneously with the filing of this Motion.

Although the Court defined the class as workers back to May 5, 2012 (three years prior to the date the lawsuit was filed), the parties believe it would be confusing to class members and an inefficient use of resources to send notice to class members whose claims have expired due to the running of the statute of limitations. Therefore, the parties propose to send notice to workers for the prior 3 years and 33 days before notice issues, rather than back to May 5, 2012.

**B.     The Settlement Terms**

The Settlement Agreement provides for a gross settlement amount of $225,000.00. Simply Right will pay this amount in 14 installments, with the first installment of $30,000.00 to be paid within 30 days of the Court's preliminary approval of the settlement. Simply Right will then pay $15,000.00 per month for the next 13 months. In the event that Simply Right files for bankruptcy prior to making all payments, Simply Right will cease making payments, the amount already paid into the settlement fund will be distributed on a pro rata basis to Plaintiffs, Plaintiffs' counsel and class members, and Plaintiffs may pursue the remainder with the bankruptcy trustee.

The settlement is non-reversionary. The gross settlement amount includes all payments to Plaintiffs and settlement class members, attorney's fees, and all payroll and withholding taxes including all employer payroll taxes, and one-half of the costs of settlement administration. Simply Right will separately pay the other one-half of the costs of settlement administration.

Settlement payments will be made on a pro rata basis to all class members who timely opt in to the settlement. Plaintiffs will be paid based on their individual claims and duration of employment as set forth in the Settlement Agreement.

Plaintiffs' counsel will seek an award of attorney's fees in the amount of 22 percent of the gross settlement amount ($49,500.00). To the extent the Court approves lesser attorney's fees, the difference will be reallocated to the fund for Plaintiffs and settlement class members.

The settlement administrator will issue the Notice of Settlement to all class members within 30 days of the Court's approval of the settlement. The Settlement Agreement provides for a single re-mailing for any undeliverable notices. The administrator will make reasonable efforts to locate the correct mailing address before re-mailing undeliverable notices. Settlement class members will have 60 days after mailing of the Notice of Settlement to opt in to the settlement.

In exchange for their settlement payments, Plaintiffs agree to release all their claims against Simply Right, Cinemark, Daniel Kilgore, and Beatrice Permann. By accepting payment, settlement class members agree to release their wage claims against Simply Right, Cinemark, Daniel Kilgore, and Beatrice Permann. Those settlement class members who do not opt in to the settlement will not release any claims against Defendants.

### C. Payments to the Settlement Class

The amount allocated to settlement payments to the settlement class will be distributed on a pro rata basis based on the total number of work weeks during the relevant time period in which the class member worked, which will be based on Simply Right's records for class members who were employees or independent contractors of Simply Right. For "helper" class members for whom Simply Right has no records, the total number of workweeks will be

determined as the lesser of (1) the number of workweeks specified on the claim form; or (2) the number of workweeks of the Simply Right employee or independent contractor who brought the class member as a helper, based on Simply Right's records. Settlement class members will be ineligible to receive a payment if they do not timely opt into the settlement.

The claims administrator will make these payments to the settlement class within ten days of Simply Right making its final payment into the settlement fund. In the event Simply Right files for bankruptcy prior to making its final payment into the settlement fund, payment to the settlement class will be expedited and the parties agree to cooperate to reach agreement on the specific timing of those payments. The settlement payments will be allocated 50 percent to wages and 50 percent to liquidated damages and interest. Settlement checks that either cannot be delivered or are uncashed after 120 days of mailing will be redistributed to the class members if over 5 percent is returned, or donated to a *cy pres* entity to be selected by Plaintiffs' counsel and approved by Defendants' counsel if 5 percent or less is returned.

### D.   Payments to Plaintiffs

Thirty-three percent of the gross settlement amount ("Current Plaintiff Fund") will be allocated to Plaintiffs. Plaintiffs will not participate in the claims process for class members and will be paid only as set forth in this paragraph. The claims administrator will calculate the individual settlement payment amounts for Plaintiffs as follows:

- Seventeen percent (17%) of the Current Plaintiff Fund to Jose Luis Arreola;
- Seventeen percent (17%) of the Current Plaintiff Fund to Clara Arreola;
- Sixteen percent (16%) of the Current Plaintiff Fund to Aurelio Sanchez;
- Sixteen percent (16%) of the Current Plaintiff Fund to Domingo Sanchez;

- Eleven percent (11%) of the Current Plaintiff Fund to Miguel Angel Godoy;
- Eleven percent (11%) of the Current Plaintiff Fund to Armida Raya;
- Six percent (6%) of the Current Plaintiff Fund to Nazario Arreola;
- Six percent (6%) of the Current Plaintiff Fund to Maribel Arreola.

The claims administrator will make these payments in two installments, the first occurring within 10 days after Simply Right's initial payment into the settlement fund, and the second occurring within ten 10 days after Simply Right's final payment into the settlement fund. The payments to Plaintiffs will be allocated 50 percent to wages and 50 percent to liquidated damages and interest. These payments have been calculated based on each Plaintiff's duration of work for Simply Right and alleged hours of off-the-clock and overtime work. These payments are allocated to Plaintiffs based on their extensive involvement in the case for the past two years, including assisting counsel in the investigation and prosecution of this case, having their depositions taken, responding to written discovery and participating in settlement negotiations.

## IV. ARGUMENT

### A. Legal Standard on Approval of FLSA Settlements

Courts addressing the question of whether, and under what circumstances court approval of FLSA settlements is required base their analysis on two Supreme Court cases, *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697 (1945) and *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946). In *Brooklyn Savings*, the Court held that employees could not waive their rights to full damages and liquidated damages in a private settlement where there was no bona fide dispute regarding the amount of wages owed. 324 U.S. at 704. In *D.A. Schulte*, the Court barred enforcement of private settlements where the dispute centered on whether an employer is

covered under the FLSA. 328 U.S. at 114. Those cases left open the question of whether there can be an enforceable private settlement of FLSA claims where there is a bona fide dispute regarding liability, such as the number of hours worked or the amount due. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 (2d Cir. 2014).

The Eleventh Circuit addressed this question and ruled that private settlements of a bona fide dispute under the FLSA could be enforced only if the district court first determines that the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir.1982).[2] *See also Cheeks*, 796 F.3d 199 (the Second Circuit held that voluntary dismissals of FLSA claims with prejudice require court approval). The Tenth Circuit has not decided the issue, but numerous decisions of the U.S. District Court for the District of Colorado hold that "[w]hen employees file suit against their employer to recover back wages under the FLSA, the parties must present any proposed settlement to the district court for review and a determination of whether the settlement agreement is fair and reasonable." *Nicholas v. Double J Disposal, Inc.*, No. 14-CV-01158-PAB-GPG, 2016 WL 559185, at *1 (D. Colo. Feb. 12, 2016); *see Felix v. Thai Basil at Thornton, Inc.*, No. 14-CV-02567-MSK-CBS, 2015 WL 2265177, at *2 (D. Colo. May 6, 2015) ("[s]tipulated settlements in FLSA cases must be approved by the court in the absence of the direct supervision of the United States Department of Labor.").[3] Here, the parties

---

[2] Although *Lynn's Foods* referenced court approval resulting in a "stipulated judgment," the Eleventh Circuit later clarified that *Lynn's Foods* does not stand for the proposition that a valid settlement of a FLSA claim must take any particular form. *Rakip v. Paradise Awnings Corp.*, 514 Fed. Appx. 917, 919-20 (11th Cir. 2013). "It only means that the district court must take an active role in approving the settlement agreement to ensure that it is not the result of the employer using its superior bargaining position to take advantage of the employee." *Id.* (citing *Lynn's Food*, 679 F.2d at 1354).

[3] The parties are aware of the recent decisions out of this District questioning whether settlement of FLSA claims requires court approval. *Ruiz v. Act Fast Delivery of Colo., Inc.*, 2017 U.S. Dist. LEXIS 4821, Civil No. 14-cv-

wish to achieve the finality and enforceability of a court-approved settlement, including obtaining court approval to send notice to class members informing them of their right to opt-in to the settlement.

To approve the parties' proposed settlement, the Court must determine that it "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Thai Basil*, 2015 WL 2265177, at *1 (quoting *Lynn's Food Stores*, 679 F.2d at 1355). In this case, the settlement should be approved because the parties have a bona fide dispute and have reached a fair and reasonable resolution.

**B.     The Parties Are Resolving a Bona Fide Dispute**

A bona fide dispute exists in this case as to whether Plaintiffs were paid overtime and minimum wages in accordance with the FLSA. Whether Plaintiffs were paid minimum wage for all hours of work depends on how many hours they worked per day and whether they brought any "helpers" along with them—both of which are highly disputed issues. Likewise, the parties dispute whether Plaintiffs worked enough hours per week to qualify for overtime. The parties have obtained competing declarations on this issue as well as a range of deposition testimony, which has been submitted to the Court in briefing on conditional certification.

Defendants valued this case using damages models based on the belief that one movie screening room could be cleaned by one Plaintiff in 30-45 minutes, whereas Plaintiffs' damages models assume much longer cleaning time and much more frequent occurrences of janitors bringing helpers with them. These differences in methodology resulted in vastly different

---

00870-MSK-NYW (D. Colo. Jan. 9, 2017); *Manohar v. Sugar Food LLC*, No. 16-CV-02454-NYW, 2017 WL 3173451, at *2 (D. Colo. July 26, 2017). Because the issue is unsettled in this District and in the Tenth Circuit, because class members may reside in jurisdictions in which approval is required, and because the parties require Court approval to send the settlement notice, the parties request Court approval of this settlement.

valuations of the case, with Defendants calculating potential damages for the class at $37,721.42 (30 minutes) to $144,694.88 (45 minutes) and Plaintiffs' valuation in the millions of dollars. Therefore, "this case is not sham litigation and … it very much involves a bona fide dispute between adversarial opponents." *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *4 (D. Colo. Nov. 13, 2013).

### C. The Parties' Settlement Is Fair and Reasonable

To determine whether a proposed settlement under Section 216(b) is fair and equitable, courts regularly apply the same factors that apply to Rule 23 class actions, namely:

> (1) whether the proposed settlement was fairly and honestly negotiated, (2) whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt, (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation, and (4) the judgment of the parties that the settlement is fair and reasonable.

*Id.* Each of these factors supports approval here.

*1. The Proposed Settlement Was Fairly and Honestly Negotiated.*

The fairness of the settlement negotiation should be examined "in light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567, 2008 WL 384579, at *5 (D. Colo. Feb. 11, 2008). Where the Settlement Agreement "was the product of arm's-length negotiations by an experienced counsel after a day-long mediation with a qualified mediator … a presumption of fairness attaches to the proposed settlement." *Whittington*, 2013 WL 6022972, at *5.

Here, the parties are represented by experienced counsel who specialize in employment

matters, including the type of wage-hour claims alleged herein. The parties have vigorously litigated all aspects of this action, engaging in substantial discovery and motions practice. In short, each party possessed ample information to evaluate fully the strengths and weaknesses of their claims and defenses. The parties were assisted by Judge Hegarty, an experienced settlement judge; negotiations were rigorous and not a product of collusion. There can be no doubt the settlement was honestly and fairly negotiated. *See also Lucas v. Kmart Corp.*, 234 F.R.D. 688, 693 (D. Colo. 2006).

    *2. Serious Questions of Law and Fact Exist, Placing the Ultimate Outcome of this Case in Doubt*

To continue through trial would expose the parties to significant risks. *See Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 285-86 (D. Colo. 1997). Plaintiffs believe that the case is triable on a collective basis for those janitors nationwide who opt-in to the action through the use of representative evidence. Plaintiffs recognize that success is not guaranteed. The parties have not yet begun post-conditional certification discovery, which Defendants believe is likely to reveal that individual issues predominate and that the case is not appropriate for collective treatment. In particular, Defendants believe that whether and to what extent janitors brought helpers and how long it took them to clean theatre screens are highly individualized determinations, though Defendants recognize that they may not prevail on this issue. Therefore, the parties face the alternate risks that the Court could decertify the class, or could allow the case to proceed to trial on a class basis.

Even aside from the risks associated with determining liability, significant uncertainties exist as to the amount of possible damages. The parties disagree on whether the half-time

overtime method of damages applies. If this litigation were to proceed, this issue would be contested at trial. *See In re New Mexico Natural Gas Antitrust Litig.*, 607 F. Supp. 1491, 1505 (D. Colo. 1984); *In re Sprint Corp. ERISA Litig.,* 443 F. Supp. 2d 1249, 1260-61 (D. Kan. 2006) (even if the plaintiffs survived summary judgment, "serious questions of law and fact" placed in doubt the value of potential recovery). In addition, while Plaintiffs have argued for a three-year limitations period, Defendants believes that the two-year limitations period for non-willful violations applies. *See Tuten v. United Airlines, Inc*., 41 F.Supp.3d 1003 (D. Colo. 2014) (granting final settlement approval where serious questions of law and fact existed with respect to applicable statute of limitations). Because there are several open questions of law and fact regarding liability and damages, this factor weighs in favor of approval.

*3. The Value of Immediate Recovery Outweighs the Possibility of Any Future Relief*

The "value of an immediate recovery" means the "monetary worth of the settlement." *Gottlieb v. Wiles*, 11 F.3d 1004, 1015 (10th Cir. 1993). This value should be weighed against "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *Id.*

The issues here are complex and will be vigorously contested, resulting in significant time and expense if the litigation continues. Barring a settlement, the parties will engage in significant post-conditional certification discovery, including written discovery requests, depositions of Simply Right managers, and depositions of opt-in plaintiffs. Defendants may file a motion to decertify the class which the parties would have to brief. Trial would include extensive testimony by Simply Right managers, class members, hourly workers, and expert witnesses. And any judgment could be appealed, thereby extending the duration of the litigation.

The value of an immediate recovery is especially apparent here, where Simply Right's financial condition is uncertain. To facilitate settlement, Defendants produced detailed financial information to Plaintiffs. Simply Right has lost significant revenue streams in 2017 and the cost of further litigation of this matter could force the company to file for bankruptcy. Recovery through a bankruptcy trustee would be unlikely to exceed the parties' current agreement. The parties were acutely aware of that possibility when negotiating the settlement, electing to have Simply Right pay into a settlement fund on a monthly basis rather than spending those resources on continued litigation.

By reaching a settlement prior to trial, both sides seek to avoid further expense and delay, and Plaintiffs can ensure recovery for all class members who opt into the settlement. *See In re Crocs, Inc. Secs. Litig.*, No. 07-cv-02351, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013) (third factor weighed in favor of preliminary approval where plaintiff presented no evidence that class could have secured a larger damage award after extensive litigation). In these circumstances, it is prudent for the parties to "take a bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). In short, the value of an immediate settlement heavily outweighs the uncertainty of any future relief.

*4. The Judgment of the Parties that the Settlement Is Fair and Reasonable*

Counsel for both sides fully support the settlement. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006); *see Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989); *Wilkerson*, 171 F.R.D. at 288-89.

When evaluated in light of these four factors, the proposed settlement is fair, reasonable, and adequate and should be approved.

### D. Award of Reasonable Attorney's Fees and Costs

Pursuant to 29 U.S.C. § 216(b), FLSA cases require settlement agreements to include "a reasonable attorney's fee to be paid by the defendant, and costs of the action." *See Whittington*, 2013 WL 6022972 at *5. To determine the reasonableness of attorney's fees and costs, the Court must look to the twelve factors established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), which are discussed in detail in Plaintiffs' forthcoming Petition for Reasonable Attorney's Fees and Costs. "There is no precise rule or formula for making [fee award] determinations. … The [district] court necessarily has the discretion in making this equitable judgment*." Garcia v. Tyson Foods, Inc.*, 770 F.3d 1300, 1311 (10th Cir. 2014) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435-37 (1983)). An attorney's fee award need not be proportionate to the damages award. *Id*.; *see also Riverside v. Rivera*, 477 U.S. 561, 576 (1986). Defendants have agreed to pay Plaintiffs for their reasonable attorney's fees and costs incurred in this litigation as provided by the Settlement Agreement.

### E. The Court Should Approve the Notice and Claim Form

After the Court conditionally certified the case, the parties conferred and reached agreement on a form of notice that met the Court's requirements as set forth in the order on conditional certification. The parties filed that notice with the Court. [Dkt. # 193-1]. The proposed Notice of Settlement that the parties attach hereto is based on the previously agreed notice, but contains modifications to reflect the settlement of the case and the procedures set forth in the Settlement Agreement for determining each opt-in's pro rata share, as well as the

procedure and timing for payment. The parties request that the Court approve the Notice of Settlement as drafted.

## V. CONCLUSION

For the reasons stated herein, the parties respectfully request that the Court (1) grant approval of the Settlement Agreement (attached as Exhibit A); and (2) approve the proposed Notice of Settlement (attached as Exhibit B).

Dated: September 30, 2017

Respectfully submitted,

| | |
|---|---|
| *s/ Brandt Milstein* | *s/ Jennifer S. Harpole* |
| Brandt Milstein | Joshua B. Kirkpatrick |
| Milstein Law Office | Jennifer S. Harpole |
| 1123 Spruce Street | LITTLER MENDELSON, P.C. |
| Boulder, CO 80302 | 1900 Sixteenth Street, Suite 800 |
| 303.440.8780 | Denver, CO 80202 |
| brandt@milsteinlawoffice.com | 303.629.6200 |
| | jkirkpatrick@litler.com |
| **ATTORNEY FOR PLAINTIFFS** | jharpole@littler.com |
| | **ATTORNEYS FOR DEFENDANTS** |