**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Case No. 15-cv-00974-RM-MEH

AURELIO SANCHEZ, *et al.*,

    Plaintiffs,

v.

SIMPLY RIGHT, INC., *et al.*,

    Defendants.

___

**ORDER**
___

    Pending before the Court is the parties', named plaintiffs Aurelio Sanchez ("Aurelio"); Domingo Sanchez ("Domingo"); Miguel Angel Godoy ("Godoy"); Jose Luis Arreola ("Jose Luis")' and Clara Arreola ("Clara") (collectively, "the named plaintiffs"), opt-in plaintiffs Maribel Arreola ("Maribel"); Nazario Arreola ("Nazario"); and Armida Raya ("Raya") (collectively, "the opt-in plaintiffs," and, together with the named plaintiffs, "plaintiffs") and defendants' Simply Right, Inc. ("Simply Right"), Beatrice Permann, and Daniel Kilgore (collectively, "defendants"), Joint Motion for Approval of Settlement Agreement ("the joint motion") (ECF No. 207). Also pending is plaintiffs' Unopposed Motion for Attorney Fee Award ("the attorney fee motion") (ECF No. 210).

    For the reasons discussed below, at present the Court has either not been provided with sufficient information in order to approve the proposed Joint Stipulation of Settlement and Release ("the joint stipulation) (ECF No. 207-1) or has concerns about the same. As a result, the joint motion is DENIED WITHOUT PREJUDICE, and the attorney fee motion is DENIED AS MOOT.

**First**,[1] in determining whether to approve a settlement under the Fair Labor Standards Act ("the FLSA"), this Court considers whether (1) the FLSA settlement is reached as a result of a bona fide dispute, (2) the settlement is fair and equitable to all parties, and (3) the settlement contains a reasonable award of attorney's fees. *Cooper v. OFS 2 Deal 2, LLC*, 2016 WL 1071002, at *2 (D. Colo. Mar. 17, 2016) (RM); *Anderson v. Walgreen Co.*, 2016 WL 74934, at *2 (D. Colo. Jan. 7, 2016) (RM). With respect to the first factor, the Court finds the explanation in the joint motion of the hotly contested issues between the parties to be valid and genuine, and thus, the Court finds the settlement to have been reached as a result of a bone fide dispute. (*See* ECF No. 207 at 11-12.)

With respect to the second factor, this Court evaluates, first, whether the settlement is fair and reasonable, and, second, whether the settlement undermines the purposes of the FLSA. *Cooper*, 2016 WL 1071002, at *2-3; *Anderson*, 2016 WL 74934, at *3-4. In considering whether the FLSA has been undermined, this Court looks at (1) the presence of other similarly situated employees, (2) the likelihood that the plaintiff's circumstances will recur, and (3) whether the defendant has a history of non-compliance with the FLSA. *Cooper*, 2016 WL 1071002, at *3; *Anderson*, 2016 WL 74934, at *4.

Here, the parties have not addressed whether their proposed settlement does or does not undermine the purposes of the FLSA. (*See generally* ECF No. 207.) As a result, the Court has not been presented with any proffer so as to make findings in this regard. Thus, if the parties move again for approval of their proposed settlement, they should explain (1) whether there are any other similarly situated employees, other than the plaintiffs, and how many they estimate there might be,

---

[1] For a recitation of the procedural and factual background of this case, see the Court's Opinions dated May 22, 2017 (ECF Nos. 185, 186), and the Report and Recommendations pertaining to those Opinions (ECF Nos.168, 174).

(2) whether there is a likelihood that the circumstances giving rise to this action will recur, and (3) whether defendant has a history of non-compliance with the FLSA.

**Second**, the Court notes the following oddity of the joint motion and the accompanying joint stipulation. Littered throughout the joint stipulation is the undefined, but capitalized term "Preliminary Approval Order." (*See generally* ECF No. 207-1.) The reason for this is that the joint stipulation appears to envisage the Court entering a "Preliminary Approval Order." In fact, the mailing of the Notice of Settlement is predicated upon the Court entering a "Preliminary Approval Order." (*See id*. at 3.) It is, thus, odd when reading the joint motion that the parties never once request this Court to enter a "Preliminary Approval Order." Preliminary approval of the settlement is mentioned once in discussing the terms of the settlement (ECF No. 207 at 6), but the parties seek a different object when requesting relief—approval of their settlement (*see id*. at 1, 17). To the extent this is meant to request *final* approval of the parties' settlement, the Court would not grant it. *See Shepheard v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 5817074, at *2-3 (D. Kan. Oct. 5, 2016) (rejecting the parties' request to approve a settlement agreement and dismiss the lawsuit with prejudice, and instructing the parties to either provide support for their settlement procedure or file a motion seeking, *inter alia*, preliminary approval of the proposed settlement).

A further oddity in this regard is that, although the joint stipulation definitely appears to envisage a "Preliminary Approval Order" being entered, the joint stipulation speaks not at all of a final approval order. Instead, the joint stipulation envisages the parties eventually filing a "joint motion for dismissal" of this case. (ECF No. 207-1 at 15.) That is again not the correct procedure. *See Shepheard*, 2016 WL 5817074, at *3 (explaining that, after the period to opt-in to the lawsuit expires, the parties could then move for final approval of their settlement and the attorney's fee award).

Thus, to the extent the parties move again for consideration of their proposed settlement, they should clearly state whether they seek *preliminary* approval of their settlement. If they do, the parties should state when they will seek *final* approval of their settlement. If they do not seek preliminary approval, the parties must explain why the joint stipulation is littered with references to a "Preliminary Approval Order," clarify such references, and provide citation to case law supporting the settlement procedure they propose.

**Third**, on the current factual record, the Court cannot find that the proposed settlement is fair and reasonable as to the potential opt-in plaintiffs. This is due to the way that the joint stipulation envisages splitting up the Gross Fund (as that term is defined in the joint stipulation). At present, the parties intend to give plaintiffs 33% of the Gross Fund. (ECF No. 207-1 at 12.) Here, 33% of the Gross Fund is $75,000. The parties then intend to divide up this $75,000 among plaintiffs, with different plaintiffs receiving more or less. (*Id*.) In the joint motion, the parties assert that plaintiffs' distributions are based upon plaintiffs' duration of work and alleged hours of off-the-clock and overtime work. (ECF No. 207 at 9.) The parties also assert that the distributions are based upon plaintiffs' extensive involvement in this case. (*Id*.)

It is impossible to tell, however, how much the proposed distributions are based upon hours worked and how much are based upon involvement in this case. In addition, because the parties have provided the Court with no information as to how much time plaintiffs have purportedly spent on this case, it is impossible to tell whether the proposed distributions contain some amount of a windfall for plaintiffs. With such open questions, the Court cannot find that the allocation of the Gross Fund is fair and reasonable for all potential plaintiffs.

One final matter with respect to the proposed payment distributions is their timing. Under the joint stipulation, plaintiffs will receive two payments; one within ten days of the Initial Payment Date (as that term is defined in the joint stipulation) and one payment within ten days of the Final Payment Date (as that term is defined in the joint stipulation). (ECF No. 207-1 at 13.) The potential opt-in plaintiffs, however, will receive only one payment; within ten days of the Final Payment Date. (*Id*. at 14.) Given the obvious fear in the joint stipulation of Simply Right filing for bankruptcy (*see id*. at 7), the Court cannot discern how it is fair to the potential opt-in plaintiffs that they must wait until the Final Payment Date for any payment, while plaintiffs may get at least some monetary solace some 13 months earlier. (*See id.*)

In this light, to the extent the parties move again for consideration of their proposed settlement, they must explain how the distributions to each plaintiff have been calculated in terms how much is being distributed for hours worked and how much for involvement in this case. The parties must also provide information as to how much time, if any, each plaintiff has spent in prosecuting this case. In addition, the parties must also explain why it is fair for plaintiffs to receive an initial payment within one month of a Preliminary Approval Order, while potential opt-in plaintiffs will not receive any payment until 14 months after any such Order.

**Fourth**, at least one of the releases provided in the joint stipulation is overly broad. The release with an obviously overbroad reach is the "General Release by Current Plaintiffs," in which plaintiffs release any claim of any kind that they may have or may have had through the date of execution of the joint stipulation. (ECF No. 207-1 at 16-17.) This is a FLSA case. It is not a case involving any other statute or law. Why the parties deemed it appropriate to include a release provision that encompasses every single possible statute or law upon which plaintiffs may have been

5

able to bring a claim is, thus, beyond the Court, and it is certainly not reasonable. *See, e.g.*, *Batres v. Valente Landscaping Inc.*, 2016 WL 4991595, at *3 (E.D.N.Y. Sep 15, 2016); *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 532-533 (E.D. Pa. 2016).

Even more egregious is that the parties did not bring the all-encompassing scope of plaintiffs' general release to the Court's attention in the joint motion. The only mention of releases in the joint motion is the brief statement that "Plaintiffs agree to release all their claims" against various parties. (ECF No. 207 at 7.) Read innocently, and naturally, this would suggest that plaintiffs had agreed to release the claims they had alleged in the Complaint. That, evidently, is not what the joint stipulation envisages. For the parties to use such slippery and misleading language in the joint motion is, thus, difficult in the best light. The parties are instructed that, should they move again for consideration of their proposed settlement, they will strike the "General Release By Current Plaintiffs" provision from any such settlement, or show that plaintiffs will be fairly and reasonably compensated for releasing the trove of claims encompassed by the same provision.

The Court will also not allow a release of Cinemark USA, Inc. ("Cinemark"). Cinemark was dismissed from this lawsuit on June 19, 2017, after the filing of a Stipulation of Dismissal of Claims Against Defendant Cinemark USA, Inc. With Prejudice. (ECF Nos. 197, 200.) Cinemark is therefore not a party to this case anymore. More importantly, Cinemark is not a party to the joint stipulation. (*See* ECF No. 207-1 at 1.) There is, therefore, no logical or legal reason for Cinemark to obtain the benefit of two different releases in the joint stipulation. As a result, should the parties move again for consideration of their settlement, they should strike any mention of Cinemark from any release.

What is potentially reasonable is the "Release By Qualified Claimants," by which plaintiffs and potential opt-in plaintiffs agree to release "any and all minimum wage and overtime claims under federal and applicable state and local law…." (ECF No. 207-1 at 16.) But as currently drafted it is still too broad, at least in relation to the claims alleged in the Complaint. In the Complaint, plaintiffs brought minimum wage and overtime claims based upon their cleaning of Cinemark theaters. (ECF No. 23 at ¶¶ 18-23.) The class definition proposed in the joint motion confirms this, as it defines the proposed class as those individuals who cleaned Cinemark theaters outside California. (*See* ECF No. 207 at 5.) The "Release By Qualified Claimants," though, releases defendants from "any and all" minimum wage and overtime claims. (ECF No. 207-1 at 16.) *See Stokes v. Interline Brands, Inc.*, 2014 WL 5826335, at *4 (N.D. Ca. Nov. 10, 2014) (rejecting a proposed release that released claims "far outside" the plaintiff's allegations).

To the extent the parties move again for consideration of their proposed settlement, any release they propose should be more narrowly tailored to the factual allegations of the Complaint. *See, e.g.*, *Vazquez v. Insight Behavioral Health Specialists, LLC*, 2017 WL 3588684, at *3 (M.D. Fla. Aug. 2, 2017) (recommending approval of a limited FLSA release); *Blandino v. MCM Constr., Inc.*, 2014 WL 11368763, at *2 (N.D. Ca. Mar. 6, 2014) (approving release language).

**Fifth**, in the Court's May 22, 2017 Opinion (ECF No. 186), granting in part plaintiff's motion for conditional certification, the Court conditionally defined the class in this action as: "All Simply Right employees (except for those in California) who cleaned Cinemark theaters on or after May 7, 2012 who brought non-employees to help them clean and/or who worked more than forty (40) hours per week without payment of one-and-a-half times their regular rate for those hours

worked over forty (40)." (ECF No. 186 at 14.) The Court's definition, thus, included one type of individual: individuals employed by Simply Right.

In the joint motion, the parties propose a new class definition. That definition is: "individuals who worked for Simply Right cleaning Cinemark movie theatres outside California, *as well as any non-employees those individuals brought with them to help them clean*, for [3] years and 33 days prior to the date on which the Notice of Settlement is mailed." (ECF No. 207 at 5) (emphasis added). The parties class definition, thus, encompasses two types of individual: individuals employed by Simply Right *and* individuals who were not employed by Simply Right. The Court has not conditionally certified this new class, and the parties make no argument in the joint motion as to why the individuals encompassed by the new class definition are "similarly situated" for purposes of the FLSA. The parties must do so, keeping in mind the legal standard for doing so that was set forth in the May 22, 2017 Opinion. (*See* ECF No. 186 at 3-5.)

**Sixth**, in the joint stipulation, the parties used the capitalized, but undefined term "Releasees". (ECF No. 207-1 at 17.) Given that the term is obviously meant to reference certain individuals or entities, it is necessary for the parties to define the term.

**Seventh**, in the event that five percent or less of the Gross Fund is returned (because settlement checks are not deposited or cashed in time) the parties propose to award such funds to an unnamed cy pres beneficiary who shall be designated by plaintiffs' counsel subject to defendants' counsel's approval. (ECF No. 207-1 at 15.) The unnamed nature of the cy pres beneficiary is not acceptable because it gives the Court no opportunity to assess whether said beneficiary is "the next best" way to distribute the returned funds, which is what a cy pres beneficiary should be. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (quotation omitted). As such, should the parties

move again for consideration of their proposed settlement, they should identify the proposed cy pres beneficiary, and explain why that individual or entity is the next best distribution for the returned funds.

In addition, the Court will not allow the provision that envisions awarding the entire "Net Settlement Fund" (as that term is defined in the joint stipulation) to a cy pres beneficiary in the event that no potential opt-in plaintiffs return a claim form.  Cy pres awards are for when "the proof of individual claims would be burdensome or distribution of damages costly."  *Dennis*, 697 F.3d at 865 (quotation and internal quotation omitted).  Here, the Net Settlement Fund appears to equal approximately 45% of the Gross Fund.  (*See* ECF No. 207-1 at 11.)  This equates to approximately $101,250.  There is nothing burdensome or costly about the distribution of such damages.  Instead, such funds should be distributed to plaintiffs in the same manner that their original payments were distributed.  *See Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, at *9 (N.D. Ca. July 11, 2013) (providing for distribution of unclaimed funds to remaining eligible class members).

**Finally**, *sua sponte*, the Court believes it in the interests of justice to equitably toll the statute of limitations in this case pending final resolution of the parties' proposed settlement.  Notably, the parties' failure to craft a fair and reasonable settlement is beyond the potential opt-in plaintiffs' control, and they should not be punished by potentially losing their claims while the parties attempt to craft such a settlement by addressing the Court's concerns herein.  *See Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-561 (6th Cir. 2000) (explaining that "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond a litigant's control.").  Therefore, until final resolution of the parties' proposed settlement, the statute of limitations in this case will be equitably tolled.

**Conclusion**

For the reasons set forth herein, the Court DENIES WITHOUT PREJUDICE the Joint Motion for Approval of Settlement (ECF No. 207). **The parties shall re-file any motion to approve their proposed settlement on or before October 30, 2017.**

In addition, the Court DENIES AS MOOT the Unopposed Motion for Attorney Fee Award (ECF No. 210). Plaintiffs shall re-file any motion to approve an attorney fee award at the same time as re-filing any motion to approve their proposed settlement.

**SO ORDERED.**

DATED this 10th day of October, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge