IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 15-cv-00974-RM-MEH

AURELIO SANCHEZ, *et al.*

       Plaintiffs,

v.

SIMPLY RIGHT, INC., *et al.*

       Defendants.

**RENEWED JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Named Plaintiffs Aurelio Sanchez, Domingo Sanchez, Miguel Angel Godoy, Jose Luis Arreola, and Clara Arreola ("Named Plaintiffs"),[1] opt-in Plaintiffs Nazario Arreola, Maribel Arreola, and Armida Raya ("Opt-In Plaintiffs") (Named and Opt-In Plaintiffs collectively, "Plaintiffs" or "Current Plaintiffs") and Defendants Simply Right, Inc., Daniel Kilgore, and Beatrice Permann ("Defendants"), through their undersigned counsel, jointly move the Court for preliminary approval of their settlement agreement.

**I.    INTRODUCTION**

This Renewed Joint Motion follows the parties' conference with the Court on October 27, 2017. During that conference, the parties discussed certain of the Court's objections to the settlement as expressed in the Court's October 10, 2017 Order (ECF No. 214) denying without prejudice the parties' initial Joint Motion. (ECF No. 207).

---

[1] The claims of Named Plaintiffs Daniel Hernandez and Benita Arreola were resolved through private arbitration in 2016 and they have separately stipulated to dismissal of their claims from this action.

As directed, the parties hereby provide additional information related to the enumerated bases from the Court's Order. Those items are the focus of this Renewed Joint Motion, and the parties incorporate by reference the contents of their original joint motion as if fully set forth herein. Furthermore, except as described below, the Joint Stipulation of Settlement and Release attached to this Renewed Joint Motion as Exhibit 1 is identical to the Joint Stipulation of Settlement and Release previously submitted as Docket No. 207-1. The parties also reattach their proposed form of notice, which is unchanged from the prior submission, as Exhibit 2.

## II. RESPONSE TO ENUMERATED CONCERNS

### A. The Settlement is Fair and Equitable

In its **first** enumerated concern, the Court noted that it does not have sufficient information to address whether the proposed settlement is fair and reasonable, and whether it undermines the purposes of the FLSA. (ECF No. 214, p. 2).

First, the Court asks about how many similarly-situated employees exist. Simply Right states that there are approximately 600 individuals in the conditionally certified class to whom notice will be sent, which includes all potentially similarly-situated employees outside of the state of California, i.e., employees of Simply Right who cleaned Cinemark movie theaters during the relevant time period. Throughout the litigation, it has been hotly contested whether the practices of which the Plaintiffs complain were widespread or localized. Because the parties did not conduct nationwide pre-certification discovery, the parties do not know how many of the 600 individuals will claim they were not paid minimum wage and/or overtime and opt-in to the litigation. Moreover, the parties do not know how many "helpers" will complete the notice provided to them by Simply Right employees and seek to join the class. Whatever the number,

the parties stipulate that for purposes of this resolution, those workers and helpers are similarly situated to the Plaintiffs.

Second, the Court inquired about the likelihood that Plaintiffs' alleged circumstances will recur in the future. Simply Right has taken steps to mitigate against this risk. Specifically, Simply Right informs the Court that the Company now classifies all of its janitors working in Cinemark theatres outside of California as employees (as opposed to independent contractors) and pays them an hourly wage (instead of a flat rate). Therefore, there is no incentive to bring "helpers" or to work off-the-clock. For these reasons, the parties submit that the Plaintiffs' alleged circumstances are unlikely to occur in the future.

Third, the Court asked whether Simply Right has a history of non-compliance with the FLSA. Simply Right states to the Court that there have been no findings from the Department of Labor or court judgments against Simply Right for the types of FLSA allegations contained in this lawsuit. The only finding or judgment Simply Right has had regarding FLSA compliance in the past five years occurred in 2013, when the Department of Labor issued a finding that Simply Right's practice of paying employees on a semi-monthly basis resulted in an overtime violation because not all overtime was captured on a workweek by workweek basis. Simply Right paid a total of $35,782.20 to 109 employees and agreed to change to a bi-weekly pay system in order to address the issue. Therefore, the parties believe that this settlement would not undermine the purposes of the FLSA.

### B. The Parties Seek Preliminary Approval and Will Return to the Court Following the Opt-In Period to Seek Final Approval

The Court's **second** concern was that the settlement agreement referenced "preliminary approval" but the parties' motion for approval did not. The parties clarify that the instant motion

requests only *preliminary* approval of their settlement. After the opt-in period closes, the parties will return to the Court to request final approval of their settlement, as contemplated by *Shepheard v. Aramark Unif. & Career Apparel, LLC*, 2016 WL 5817074, at *2-3 (D. Kan.Oct. 5, 2016). The parties have modified the proposed settlement agreement attached as Exhibit 1 to reflect the preliminary and final approval processes.

### C. The Proposed Settlement Is Fair and Reasonable to Opt-Ins

In its **third** point, the Court queries the Current Plaintiffs' damages calculations and the allocation of damages between the Current Plaintiffs' hours worked and their involvement in the case. Below, the parties show that Plaintiffs' counsel calculated the Current Plaintiffs' damages based on evidence of hours worked, while the acceleration of payment to the Current Plaintiffs is justified by their involvement in the case.

Plaintiffs' counsel calculated the Current Plaintiffs' damages by averaging two competing methods for calculating damages: one based on Defendants' time records, and the other based on Plaintiffs' testimony as to their hours worked. The former basis for calculations was likely to be advocated by the Defendants should the case have proceeded to trial, while the latter would have been argued by the Plaintiffs. The parties submit that taking both methods into account for settlement purposes presents a fair middle ground which accounts for the risk borne by each side that the fact finder might have selected the other party's preferred method of calculation.

The first method relies on Simply Right's time record evidence of hours worked by Plaintiffs Daniel Hernandez, Benita Arreola, Nazario Arreola and Maribel Arreola. These records were created when Plaintiffs clocked in to Defendant Simply Right's telephone-based

time keeping system. Plaintiffs would have argued at trial that these records were not accurate as to employees' actual hours worked because Plaintiffs' pay was not based on the number of hours they worked; they were paid at a flat rate without regard to the number of hours they actually worked. For this reason, Plaintiffs would have argued, employees clocked in irregularly, often after beginning to work and/or before stopping work, if they clocked in at all. Plaintiffs would have presented evidence that Defendant Simply Right audited its employees' clocking practices around the country and found widespread discrepancies.

Based on Simply Right's time records, and taking into consideration the amount these Plaintiffs' average weekly pay, Plaintiffs submit that they suffered an average of $49.72 in damages per week.

The second figure in the averaging calculation is taken from these same four Plaintiffs' testimony as to how many hours they worked each week. Had this matter proceeded to trial, Defendants would have contested Plaintiffs' testimony as to their hours worked, arguing that the testimony was inconsistent and not reliable. Based on that testimony, and the average amount each was paid per week, these Plaintiffs submit that they suffered an average of $158.02 in damages per week.

Plaintiffs submit that the average damages figure, then, is $49.72 (time record evidence) + $158.02 (testimonial evidence) = $207.74/2 = **$103.87 per week.** *Id.* Multiplying the average workweek damages figure by the number of workweeks each Plaintiff worked yields the total individual damages figure for each Plaintiff. Plaintiffs' total damages calculated in this way were $94,313.96. The parties submit that this method for calculating the Current Plaintiffs' damages is fair and reasonable for purposes of settlement valuation.

In order to reach settlement for themselves and for the class, and taking into consideration the risks associated with continued litigation, Defendant Simply Right's precarious financial position, the time this litigation has already been pending and the prospect of lengthy continued litigation, the Plaintiffs agreed to accept $75,000.00 to settle the matter, or 33% of the Gross Settlement Fund. Each Plaintiff's share of that amount was calculated based on the number of workweeks each worked.

The Court points out that the settlement agreement provides that Plaintiffs will be paid their share of the Gross Settlement Fund upon Simply Right's initial payment of $30,000.00, and their remaining share upon Simply Right's completion of monthly payments funding the settlement fund, or upon Defendant Simply Right's declaration of bankruptcy. ECF No. 214 at 5. Class Members, on the other hand, will only be paid upon Simply Right's completion of monthly payments funding the settlement fund, or upon Defendant Simply Right's declaration of bankruptcy.

Plaintiffs submit that the acceleration of a portion of their payment is fair and justified for three reasons. First, payment to Plaintiffs upon Simply Right's first payment will not affect the total amount paid to Class Members. Thirty-three percent of Simply Right's first payment will be set aside for the Current Plaintiffs in the Current Plaintiff Fund, while forty-five percent of Simply Right's first payment will be set aside for Class Members in the Net Settlement Fund. This allocation will apply to each of Simply Right's payments into the Gross Settlement Fund. Whether partial payment is made to the Current Plaintiffs at the time of the first payment or full payment is made at the end of the payment period (or upon Simply Right's bankruptcy) will not affect the amount of the Gross Settlement Fund that is allocated to the Current Plaintiff Fund or

to the Class's Net Settlement Fund. Class Members cannot be paid on the same schedule only because the class will not be ascertained until after Simply Right's first payment is made and any disputes as to class membership are resolved.

Second, Plaintiffs offer that their investment of time and effort in bringing the case to a successful conclusion for themselves and for the class justifies their receipt of a portion of their settlement payment at the front end of the payment schedule. Plaintiffs Benita Arreola, Clara Arreola, Jose Luis Arreola, Maribel Arreola, Nazario Arreola, Daniel Hernandez and Armida Raya were deposed. All Plaintiffs attended a formal settlement conference with Judge Hegarty. Two of the Plaintiffs travelled from Kansas to attend the settlement conference. All Plaintiffs worked closely with Plaintiffs' counsel to review the voluminous document production involved in this matter, and conferred with Plaintiffs' counsel in person and via telephone for what must have seemed an interminable series of meetings to discuss the evidence supporting their minimum wage and overtime claims, evidence regarding Defendant Cinemark USA, Inc.'s status as a putative FLSA joint employer, the similarly-situated status of the Class Members, Defendants' defenses to each of the same, and to prepare for and discuss prolonged settlement negotiations. The Current Plaintiffs' work on behalf of the class should be rewarded.

Third, Plaintiffs aver that they had the opportunity to settle this matter in 2015 for themselves only. They choose, with advice of counsel, to not be, in their view, "bought off," and rather to pursue their claims on behalf of all those similarly affected. Payment of wages they are due was delayed by two years as a result. Plaintiffs offer that their decision to extend the litigation in order to recover wages for their co-workers justifies the acceleration of a portion of

Plaintiffs' payment, particularly given that doing so will not adversely affect payment to the Class Members.

**D. The Scope Of The Release, and The Inclusion of Cinemark as a Released Party**

The **fourth** issue raised by the Court is the scope of the releases in the settlement agreement. First, based on the fact that the Court has already dismissed Cinemark from the lawsuit, the Court expresses concern that settlement agreement includes a release of the named and opt-in Plaintiffs' claims against Cinemark. The parties submit that including Cinemark as a released party is appropriate for several reasons.

Most importantly, the janitorial services contract between Cinemark and Simply Right contains an indemnification agreement, under which Simply Right agreed to indemnify Cinemark against any claims that Simply Right's janitors are joint employees of Cinemark, exactly as alleged in this action. *See* ECF No. 124 at Exhs. A and B at § IX (Simply Right agrees to "indemnify, defend … and hold harmless" Cinemark from any claim "arising out of [Simply Right's] employees' claims that an employment relationship exists between [Simply Right's] employees and [Cinemark] and relating to or arising out of such alleged employment relationship, including, without limitation, any causes of action … arising under or based on the Fair Labor Standards Act…." If the settlement agreement does not include a release the opt-ins' FLSA claims against Cinemark, then, after Simply Right has paid them in exchange for their release of claims against Simply Right, the opt-ins could turn around and sue Cinemark for the same alleged violations, and Simply Right would again have to pay the cost of defense. Therefore, Simply Right is unable to fully and finally resolve the claims raised in this action unless Cinemark is included as a released party.

In addition, the claims of Current Plaintiffs Aurelio Sanchez, Domingo Sanchez, Miguel Godoy, and Armida Raya are currently stayed by this Court pending arbitration. In their arbitrations, no finding has been made as to whether Cinemark is a joint employer, and the Court's holding that Cinemark is not a joint employer for purposes of the federal action is not binding upon the private arbitrations. In order to fully settle the stayed Current Plaintiffs' claims, the settlement agreement needs to include their release of Cinemark.

The second concern raised by the Court regarding the scope of the release was the fact that the settlement agreement includes a global release by the Current Plaintiffs.[2] The parties submit that the settlement agreement contains sufficient consideration for the Current Plaintiffs to enter into a global release. In particular, the additional consideration provided to the Current Plaintiffs includes the agreement that the Current Plaintiffs will receive an initial portion of their payments after Simply Right makes the initial large payment into the settlement fund, as well as the provision stating that Daniel Kilgore and Beatrice Permann will not be released from liability if Simply Right declares for bankruptcy prior to making its initial large payment. The parties believe this additional consideration is sufficient to support a global release and is analogous to and consistent with this Court's decision in *Cooper v. Vision Oil Tools, LLC*, 2016 WL 1071002, *3, n.2 (D. Colo. 2016), allowing a global release in exchange for an incentive payment.

Third, the Parties have revised the language in the attached release agreement to release only the opt-in Plaintiffs' minimum wage and overtime claims that arose from their cleaning of Cinemark theatres outside California (as opposed to "any and all" minimum wage and overtime claims), consistent with the class definition.

---

[2] The parties apologize to the Court for any confusion caused by the statement in their initial motion that "Plaintiffs agree to release all their claims." The parties intended this to be a clear statement that Plaintiffs would enter into a global release of not only the claims brought in the lawsuit, but any and all claims they may have against Defendants, as is typical in settlements of employment-related claims, and were not attempting to hide this fact from the Court.

### E. The Class Definition Should Include "Helpers"

As to the **fifth** issue identified, the Court points out that it certified a class of Simply Right employees (outside California) and did not include individuals who were not employed by Simply Right in the definition of the class. ECF. No. 214 at 7-8. The parties, on the other hand, seek to include both acknowledged Simply Right employees and the people who accompanied them to clean theaters (the "helpers") in the class.

To resolve this discrepancy, the parties propose the following solutions. First, the Court may include the helpers as employees in the conditionally certified class. As described below, it has been Plaintiffs' position throughout the litigation that Simply Right employed the helpers, and Simply Right stipulates that it employed the helpers for the purposes of settlement. In the alternative, the Court may conditionally certify a new class encompassing the helper employees. The parties submit that either solution is proper because it is and has been the parties' understanding and intent that both classes of workers, Simply Right's acknowledged employees and their helpers, were to be the subject of the class relief sought in litigation and achieved in settlement.

As to the parties' first proposed solution, the helper employees can be included in the class of employees already certified because Simply Right stipulates that the helpers were their employees for the purposes of the FLSA in the context of this settlement. The stipulation finds factual support in the record. It has been Plaintiffs' position throughout that the helpers were Simply Right's employees because Simply Right knew or should have known that the helpers performed work for Simply Right. *Whitaker v. Pac. Enterprises Oil Co. (USA),* 956 F.2d 1170 at *1 (10th Cir. 1992) (Whether a person is an employee for the purposes of FLSA liability turns

on whether the alleged employer knew or should have known that the person was performing work.); *Gulf King Shrimp Co. v. Wirtz*, 407 F.2d 508, 512 (5th Cir. 1969) (Family members who helped shrimp-header workers were "employees" under the FLSA because the defendant should have known that the family members were performing work); *Marshall v. Debord*, 1978 WL 1317 (E.D. Okla. 1978) (Family members of nursing home employees who helped hired employees with defendant's knowledge were "employees" for the purposes of the FLSA); *Burry v. National Trailer Convoy, Inc.,* 239 F.Supp. 85, 93 (E.D. Tenn. 1963), *aff'd,* 338 F.2d 422 (6th Cir. 1964) ("A person who is permitted to work by the employer, although the employer has not expressly hired or employed him, is an employee within the meaning of the Act."). Should the case have proceeded to trial, Plaintiffs would have marshaled evidence like the following to show that the helpers were Simply Right's employees:

Ex. 3, <u>Declaration of Nazario Arreola</u>, at ¶¶ 3-4:

> I was hired by Simply Right Director of Operations Beatrice Permann. In April, 2014, my wife, Maribel Arreola, and I went to a hotel in Fort Collins where Ms. Permann was staying. She told me that I would be signed up as an employee. She helped me fill out all the paperwork on her tablet. Ms. Permann told my wife and me that my wife would need to clean the theaters with me in order to get all the cleaning done. Ms. Permann did not have my wife fill out any of the paperwork that she had me do.

Ex. 4, <u>Declaration of Daniel Hernandez</u>, at ¶¶ 5-6:

> The Defendants knew and approved of my wife working with me. I know this because our Supervisor, Armida Raya, talked with us about my wife working with me, visited us at the theaters and saw that my wife was working with me, and always told me that I needed to bring other people to help me to clean the theaters because it was not possible to get it done alone. Also, Defendant Beatriz Permann came to the theaters to introduce my wife and me to the new supervisors after Armida Raya left. Ms. Permann talked with me and my wife, knew our names and knew that we

were both working there under the one contract. Ms. Permann even gave
us a headlamp to use to clean areas that were hard to see.

Ex. 5, <u>Declaration of Armida Raya</u>, at ¶ 9:

Defendants use a scheme wherein they sign up employees as independent
contractors, pay them a flat rate to clean theaters, and, often, have more
than one employee work under each contract's flat rate. This way, they
avoid paying minimum and overtime wages...

Ex. 6, Rule 30(b)(6) Dep. of Simply Right at 68:4-7:

Q: Have you ever been aware of an instance where one of your custodians brought
somebody to help them clean who hadn't filled out paperwork?
A: Yes. Are we done with this document?

Simply Right's stipulation that it employed the helpers for the purposes of this settlement is supported by evidence. It is appropriate to include the helpers in the already-certified class of Simply Right employees.

In the alternative, the Court could conditionally certify a separate class of helpers. The helpers are similarly situated for the purposes of FLSA conditional certification because Plaintiffs made substantial allegations indicating that helpers around the country were subject to the same policy that resulted in their not being paid minimum and overtime wages.

As the Court notes in its order conditionally certifying the initial class, "[a]t the initial 'notice' stage, this Court 'requires noting more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" ECF No. 186 at 3 (citing *Thiessen v. Gen. Electric Capital Corp.,* 2678 F.3d 1095, 1102 (10th Cir. 2001)). In harmony with the Court's order conditionally certifying the initial class, the notice stage standard applies to this new class because the parties have only engaged discovery relating to the

similarly-situated status of Simply Right janitors, and have not engaged in merits-stage discovery. ECF. No. 186 at 3-5.

Plaintiffs alleged that Simply Right failed to pay Nazario Arreola and Maribel Arreola minimum wages for hours they worked for Simply Right. ECF No. 23, First Amended Complaint at ¶ 22. Nazario Arreola was Simply Right's acknowledged employee, and Maribel Arreola was the helper employee. Plaintiffs also alleged that Simply Right failed to pay Plaintiffs Aurelio Sanchez, Domingo Sanchez and Miguel Angel Godoy minimum and overtime wages for hours they worked for Simply Right. *Id.* at ¶ 23. Aurelio Sanchez was Simply Right's acknowledged employee while Domingo Sanchez and Miguel Angel Godoy were helper employees. Plaintiffs thus alleged that Simply Right violated the FLSA rights of both acknowledged and helper employees. Plaintiffs further alleged that Simply Right committed these FLSA violations across the nation. *Id.* at ¶¶ 21, 22.

Plaintiffs' allegations are shown to be substantial by record evidence. As is noted in Plaintiffs' Motion for Conditional Collective Action Certification, Simply Right janitors around the country testified that they were assisted by helper employees, that Simply Right knew that the helpers were working, and that the helpers suffered minimum and overtime wage violations. ECF No. 121, pp. 7-13.

For example, Simply Right janitor Adrian Reyes stated that: "I worked for Simply Right cleaning Cinemark movie theaters in Salt Lake City, Utah. I worked about 7 hours each night cleaning the theaters, 7 nights per week. My wife helped me to clean the theaters, working alongside me on the same schedule. My supervisor knew that my wife worked there with me because he saw her working with me in the theater. They paid me $500 every two weeks, or

about $2.56 per hour when you count my wife's hours. They never paid me or my wife overtime wages for each hour over 40 we worked each week." ECF Nos. 121 at 10, 121-3 at ¶¶ 2-5.

Similarly, Simply Right employee Eriberto Aleman de los Santos testified that: "I worked for Simply Right cleaning Cinemark movie theaters in Deerpark, Illinois. My wife worked with me cleaning the theaters. My supervisors knew that my wife worked with me cleaning theaters, but they only had me fill out an employment application. We worked, on average, 2.5 hours each night, 7 days per week. They never paid my wife wages, they only paid me. For a time during our employment, they only paid me $500 every two weeks. If you count my wife's hours worked during this period, they only paid us $7.14 per hour for our work." ECF Nos. 121 at 10, 121-4 at ¶¶ 2-8.

And Simply Right janitor Alfonso Solis testified that: "I work for Simply Right cleaning Cinemark movie theaters in Cincinnati, Ohio. I bring my wife with me to help clean the theaters. I have also brought other members of my family to clean the theaters. For example, my supervisor once asked me to bring 5 members of my family to help clean the theater for a period of about 3 days when the theater was very busy about a year ago. My supervisor asked me to bring more people because he said I couldn't get it all done on my own. My employers never paid the extra people I brought to help clean, even though I told them that my family members needed to get paid." ECF Nos. 121 at 10-11, 121-5 at ¶¶ 2-6.

The above testimony, coupled with the additional testimony described in <u>Plaintiffs' Motion for Conditional Collective Action Certification</u>, ECF No. 121, pp. 7-13, shows the substantial nature of Plaintiffs' allegations that the helper employees suffered under the same policy that resulted in violations of their FLSA rights. Although Simply Right disputes the

allegations set forth above and has marshaled its own counter-evidence, for purposes of this settlement only, Simply Right does not object and would stipulate to the Court conditionally certifying an additional class consisting of the helper employees.

Because the parties designed their settlement and notice plan to include the helper employees, should the Court include the helper employees in the already-certified class, or certify a new class, the parties submit that their proposed settlement and notice plan may proceed as currently drafted.

### F. The Definition of "Releasees"

**Sixth**, the parties have revised the release attached hereto to omit the undefined term "Releasees" and instead, properly refer to the defined term "Released Parties."

### G. The Allocation of The Gross Fund In The Event That Settlement Checks Go Uncashed or Few Individuals Opt-In

As to the Court's **seventh** concern, the parties identify El Centro Humanitario Para Los Trabajadores ("El Centro") as the cy pres beneficiary to whom funds will be forwarded if five percent or less of the Gross Fund is returned due to un-cashed or un-deposited settlement checks. A cy pres award must be "guided by (1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1039 (9th Cir. 2011). The American Law Institute has adopted a rule for cy pres awards requiring parties "to identify a recipient whose interests reasonably approximate those being pursued by the class." Principles of the Law of Aggregate Litigation § 3.07(c) (Am.L.Inst.2010).

In this case, low-wage immigrant workers brought suit under the FLSA to recover wages they claim they are due. The purpose of the FLSA is "to secure for the lowest paid segment of the nation's workers a subsistence wage." *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 116 (1946).

El Centro focuses its services on the low-wage immigrant worker population, holds wage theft clinics for low-wage immigrant workers and has as its mission "to promote the rights and well-being of day laborers and domestic workers in Colorado through education, job skills, leadership development, united action and advocacy." *See* http://www.centrohumanitario.org/about-us/. The parties submit that forwarding unclaimed funds from this case to El Centro is the "next best" way to distribute those funds.

The Court also directed the parties to revise their proposed settlement agreement to require that, should no Class Member opt in to the lawsuit, the Net Settlement Fund will be distributed to the Current Plaintiffs rather than to a cy pres beneficiary. The parties have revised the proposed Settlement Agreement accordingly. Ex. 1, Section F(5).

### H. The Parties Have Incorporated The Court's Holding Regarding Tolling

The parties have revised the proposed Settlement Agreement and proposed Notice of Settlement to incorporate the Court's order tolling the statute of limitations from October 10, 2017 until the date notice is mailed to the putative class members. Based on the tolling order, the limitations period runs three years and 33 days backward from October 10, 2017, which is until September 7, 2014.

### III. CONCLUSION

For the reasons stated herein, the parties respectfully request that the Court (1) grant approval of the Settlement Agreement (attached as Exhibit 1); and (2) approve the proposed Notice of Settlement (attached as Exhibit 2).

Dated: October 30, 2017.

Respectfully submitted,

*s/ Brandt Milstein*
Brandt Milstein
Milstein Law Office
1123 Spruce Street
Boulder, CO 80302
303.440.8780
brandt@milsteinlawoffice.com

**ATTORNEY FOR PLAINTIFFS**

*s/ Jennifer S. Harpole*
Joshua B. Kirkpatrick
Jennifer S. Harpole
LITTLER MENDELSON, P.C.
1900 Sixteenth Street, Suite 800
Denver, CO 80202
303.629.6200
jkirkpatrick@litler.com
jharpole@littler.com

**ATTORNEYS FOR DEFENDANTS**

Firmwide:150913288.4 084744.1001