IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 15-cv-00974-RM-MEH

AURELIO SANCHEZ, *et al.*

       Plaintiffs,

v.

SIMPLY RIGHT, INC., *et al.*

       Defendants.

**PLAINTIFFS' RENEWED UNOPPOSED MOTION FOR ATTORNEY FEE AWARD**

Pursuant to the Court's order of October 10, 2017 (ECF No. 214), Plaintiffs hereby renew their motion move for approval of an award of an attorney fee pursuant to 29 U.S.C. § 216(b). The fee sought totals 22% of the common fund settlement achieved in this case.

Plaintiffs and their counsel litigated this matter over the course of more than two years through contentious discovery, extensive motions practice and two formal settlement conferences. Plaintiffs and their counsel secured a class common fund settlement of $225,000.00. Should the Court approve the settlement,[1] Plaintiffs will have

---

[1] *See* Joint Motion for Approval of Settlement Agreement, Doc. No. 207, and Renewed Joint Motion for Approval of Settlement Agreement, Doc. No. 218.

prevailed in recovering wages they and the members of the class are due. Counsel seeks $49,500.00 in fees, which represents 22% of the common fund.

### I. The Standard for Approving Attorney Fee Awards in FLSA Class Cases.

The FLSA provides that "[t]he court in [an FLSA] action shall… allow a reasonable attorney's fee to be paid by the defendant, and costs of the action" where plaintiffs prevail. 29 U.S.C. §216(b) (emphasis added). Attorney fees are "an integral part of the merits of FLSA cases," *Shelton v. M. P. Ervin*, 830 F.2d 182, 184 (11th Cir. 1987), and, as courts have repeatedly noted, the ability of FLSA claimants to recover a reasonable attorney fee is crucial to the statute's enforcement scheme. *See Fegley v. Higgins*, 19 F.3d 1126, 1134-1135 (6th Cir. 1994) (the "purpose of the FLSA attorney fees provision is to ensure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances" and to encourage "the vindication of congressionally identified policies and rights") (internal quotes and citations omitted).

"In [wage and hour] class action cases, counsel who obtain a common fund settlement are entitled to recover reasonable attorneys' fees paid from the fund." *Shaw v. Interthinx, Inc.*, 13-CV-01229-REB-NYW, 2015 WL 1867861, at *5 (D. Colo. Apr. 22, 2015) (citing *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir.1994)). Courts generally award attorney fees in common fund cases "based on a percentage of the common fund obtained for the benefit of the class" thus, "proportionately spreading payment of attorney fees among the class members." *Lucken Family Ltd. Partnership, LLP v. Ultra Resources, Inc.*, 2010 WL 5387559 at *2–3 (D.Colo. Dec. 22, 2010). "The Tenth Circuit favors the common fund approach, as opposed to the lodestar method,

2

because a percentage of the common fund is less subjective than the lodestar plus multiplier approach, matches the marketplace most closely, and is the better suited approach when class counsel were retained on a contingent fee basis, as in this case." *Id.* at *2 (citation and internal quotation marks omitted); *see also Anderson v. Merit Energy Co.*, 2009 WL 3378526 at *2 (D.Colo. Oct. 20, 2009) ("Under Tenth Circuit law, attorneys' fees in common fund cases are generally awarded based on a reasonable percentage of the fund created.").

Courts review percentage attorney fee awards for reasonableness, looking to the twelve factors articulated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.* to guide their review. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988) ("Because [the *Johnson*] factors measure the attorneys' contributions, they are [] appropriate in setting and reviewing percentage fee awards in common fund cases."). The *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the question presented by the case, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) any time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorney, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. 488 F.2d at 717-19 (5th Cir. 1974). The 22% of the common fund Award sought here is appropriate under these factors.

**(1)   Time and Labor Required**

Plaintiffs' counsel dedicated significant resources and time to litigating this case. During the two-year litigation, the parties engaged in extensive motions practice, including briefing the following motions: A motion to dismiss (Doc. No. 12), a motion to compel arbitration and strike the collective action class (Doc. No. 13), a motion to amend the complaint (Doc. No. 19), a motion to compel discovery responses (Doc. No. 64), a motion to stay (Doc. No. 92), a motion to enforce a discovery order (Doc. No. 94), two motions to toll the statute of limitations (Doc. Nos. 102 and 178), a motion for conditional certification of an FLSA collective action (Doc. No. 121), cross motions for summary judgment (Doc. Nos. 123 and 134), a renewed motion to stay (Doc. No. 125), a motion to re-open discovery (Doc. No. 129), court-ordered briefing regarding the dispositive nature of collective action certification motions (Doc. Nos. 144 and 145), a motion to strike (Doc. No. 149), a motion to restrict communications with witnesses (Doc. No. 157), and objections to the Magistrate Judge's recommendation on summary judgment (Doc. No. 169).

The parties also engaged in extensive written and oral discovery, conducting 12 depositions, reviewing more than 15,000 documents, and conducting interviews of class members from Colorado and five other states. Plaintiffs' counsel also spent significant time on case development, extensive client interaction, many hours of document review and data analysis, multiple rounds of negotiation prior to, during and after two formal settlement conferences, pre-mediation client preparation, settlement agreement and notice drafting, and briefing of the motion for approval of the settlement.

Plaintiffs submit herewith contemporaneous time records showing that their counsel expended a total of 755.35 attorney hours in bringing this case to conclusion.

Ex. 1.[2] Attorney Brandt Milstein bills at $300 per hour. This hourly rate is appropriate given Mr. Milstein's years in practice and experience in this area of law. Ex. 2, <u>Affidavit of Brandt Milstein</u>. Plaintiffs also incurred at total of $5,371.47 in costs, all of which were advanced by counsel. Ex. 1; Ex. 2, at ¶ 13. The total value of Plaintiffs' attorney hours, plus costs, is $231,976.47.

The 22% ($49,500) award sought represents 21% of Plaintiffs' lodestar fees and costs. Because a significant portion of counsel's hours were expended in Plaintiffs' ultimately unsuccessful efforts to hold Defendant Cinemark USA, Inc. liable as an FLSA joint employer, and in order to facilitate settlement given the remaining defendants' precarious financial position, counsel seeks approval of an award representing just 21% of his lodestar fee.

**(2)    The Novelty and Difficulty of the Questions Presented by the Case**

This case presented two difficult questions: 1) Whether Defendant Cinemark USA, Inc. could be held liable as an FLSA joint employer; and 2) Whether a nationwide collective action could be prosecuted in a case where the defendants failed to maintain records of many of the class members' hours of work and wages paid. Resolution of these core questions required two years worth of investigation, contested discovery motions practice, extensive document review and witness depositions and interviews, and briefing on both issues. The jurisprudence describing FLSA joint employer status and the case law regarding the propriety of collective action in factually difficult settings is not well-settled and is complex. Plaintiffs' counsel, though specialized in this area,

---

[2] Because counsel changed time-keeping systems during the pendency of this matter, counsel's time records for the February, 2015 through September, 2016 period appear in a different format than the records for the October, 2016 through September, 2017 period.

necessarily expended a large number of attorney hours in researching the law, uncovering and marshaling the evidence, and briefing both issues.

In addition, this case required sustained effort to bring to closure protracted settlement negotiations which broke down at various points and required the repeated assistance of Magistrate Judge Hegarty. The negotiations in this case were novel and difficult due to the complex legal issues and a high level of mistrust and difficult communications between counsel and the parties.

**(3)   The Skill Requisite to Perform the Legal Service Properly**

As this Court is aware, wage and hour class actions are governed by highly technical federal wage statutes and regulations, as well as developing case law. Plaintiffs' counsel focuses his practice in this area and has extensive experience litigating class cases under the FLSA and state wage statutes. Ex. 2, <u>Affidavit of Brandt Milstein</u>, at ¶ 9. Plaintiffs' counsel had the requisite skill to perform the legal service required in this complex litigation.

In addition, Plaintiffs and the Class members are almost exclusively immigrant, Spanish-speaking individuals. Special skills are required to represent and protect the rights of members of the Spanish-speaking immigrant community. Obviously, language and cultural skills are required to interact with and adequately understand the desires of members of this group. Here, Plaintiffs' counsel speaks Spanish fluently and lived and worked in Latin America. Plaintiffs' counsel has extensive experience representing and protecting the rights of documented and undocumented Latino immigrants in wage and hour litigation. *Id.* Counsel holds a Master's degree in Latin American Studies, which

provides him with the academic, linguistic and cultural background required to adequately represent Latin American immigrants. *Id.* at ¶ 3.

### (4) The Preclusion of Other Employment by the Attorney Due to Acceptance of the Case

Plaintiffs' counsel, having dedicated more than 750 hours to the prosecution of this matter, spent time on this case that could have been spent on other worthwhile cases. This Court has recognized the inherent preclusion of other work implicit in acceptance of a large and complex class action for low wage workers:

> Attorneys attempting to handle a large class such as this are precluded by the ticking of the clock from taking certain other cases given that they have decided to take a chance on a possible recovery in a contingent fee case rather than strictly working on paid hourly wages. There is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts. This case involved workers who were neither highly skilled nor highly paid, making a contingent fee arrangement even more risky…"

*Whittington v. Taco Bell of Am., Inc.,* No. 10-CV-01884-KMT-MEH, 2013 WL 6022972*6 (D. Colo. Nov. 13, 2013). *See also, In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. 2d at 1150 ("It is fair to assume… that lead counsel's efforts on this case could have been devoted to other cases which may have proven worthwhile. This assumption, however, does not weigh heavily in my analysis.").

Here, Plaintiffs' counsel spent significant hours on this case, remuneration for which was entirely contingent on the outcome of the matter. Plaintiffs' counsel could have spent those hours on guaranteed fee-generating work.

### (5) The Customary Fee

Plaintiffs seek an attorney fee award of 22% of the common fund settlement. Courts in the Tenth Circuit regularly approve awards representing a greater percentage

7

of the settlement common fund in FLSA cases. *See, e.g. Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-01884-KMT-MEH, 2013 WL 6022972*6 (D. Colo. Nov. 13, 2013) ("Together the fees and costs amount to approximately 39% of the fund as a whole. This is within the normal range for a contingent fee award."); *Lucken Family Ltd. Partnership, LLLP v. Ultra Resources, Inc.,* Civil Action No. 09–cv–01543–REB–KMT, 2010 WL 5387559, at *5–*6 (D.Colo. Dec. 22, 2010) ("The customary fee awarded to class counsel in a common fund settlement is approximately one third of the total economic benefit bestowed on the class.") (citing*, inter alia, Vaszlavik v. Storage Technology Corp.,* Case No. 95–B–2525, 2000 WL 1268824, *4 (D.Colo. Mar. 9, 2000) ("requested fee of 30% of the settlement is well within the ordinary range of common fund awards," and "[a] 30% common fund award is in the middle of the ordinary 20%–50% range and is presumptively reasonable."); *Cimarron Pipeline Construction, Inc. v. National Council on Compensation,* Nos. CIV 89–822–T, 1993 WL 355466, at *2 (W.D.Okla. June 8, 1993) (noting that "[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis," and finding that "attorneys' fees of 33 1/3% of the common fund created by the efforts of counsel for the Class are in line with comparable other cases, [and] consistent with prevailing case law of this circuit"); *Sanders v. MPRI, Inc.*, No. 5:08–CV–00345–R (W.D.Okla. July 9, 2009) (approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, at *15 (W.D.Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement).

8

The 22% award sought, which represents a fraction of counsel's lodestar fees, is well within the range of customary fee awards in similar cases.

### (6)     Whether the Fee is Fixed or Contingent

Counsel represents Plaintiffs on a contingency fee basis. The representation agreement entered into between counsel and Plaintiffs provides that, in the event that Plaintiffs prevailed, counsel would recover the greater of his FLSA lodestar fees or 33 1/3% of the overall recovery. Had Plaintiffs not prevailed, counsel would have not recovered any fees. Ex. 2, Affidavit of Brandt Milstein, at ¶ 13.

Such "contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation... and transfer a significant portion of the risk of loss to the attorneys taking a case. Access to the courts would be difficult to achieve without compensating attorneys for that risk." *In re Abrams,* 605 F.3d 238, 245–46 (4th Cir.2010). Most of the minimum wage workforce, including the Plaintiffs and Class Members here, "cannot afford to retain counsel at fixed hourly rates... yet they are willing to pay a portion of any recovery they may receive in return for successful representation." *Wells v. Sullivan,* 907 F.2d 367, 371 (2d Cir.1990).

As is noted above, "[t]here is, of course, the possibility in a case of this kind that the lawyer, having given up other cases in order to actively pursue this case, will actually recover no payment for his time and efforts. This case involved workers who were neither highly skilled nor highly paid, making a contingent fee arrangement even more risky…" *Whittington,* 2013 WL 6022972 at *6.

In sum, the risk associated with the contingency fee arrangement here augurs for Court approval of the 22% award sought. *See In re Qwest Commc'ns Int'l, Inc. Sec.*

*Litig.*, 625 F. Supp. at 1151 ("A contingent fee… is designed to reward counsel for taking the risk of prosecuting a case without payment during the litigation, and the risk that the litigation may be unsuccessful.").

### (7) There Were No Time Limitations Imposed by the Client or the Circumstances

The *Johnson* court concluded that priority work that delays a lawyer's other work is entitled to a premium. Because this case proceeded through a normal, though extensive and prolonged, course of litigation, Plaintiff believes that this factor is not relevant to the instant case. *See, Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d at 1151.

### (8) The Amount Involved and the Results Obtained

The $225,000.00 settlement in this case represents a substantial recovery of wages for low-wage workers. Given the significant total recovery for the Plaintiffs and Class Members, and the excellent results obtained compared with what might have been awarded should the case have proceeded through trial, this factor weighs in favor of a finding of reasonableness of the 22% award sought.

### (9) The Experience, Reputation and Ability of the Attorneys

As is described in subsection (3) above, Attorney Milstein focuses his practice on, and has extensive experience in, representing immigrant workers in wage and hour class and collective action litigation. *See also* Ex. 2, Affidavit of Brandt Milstein. Counsel has shown his ability by achieving the excellent result obtained for the Plaintiffs and the Class in this action. This factor also weighs in favor of approval of the 22% award.

### (10) The "Undesirability" of the Case

Because the Plaintiffs and the members of the Class are low-wage immigrant workers without the means to hire counsel on an hourly fee basis, this case could only have been litigated via a contingency fee arrangement. The "undesirability" of this case to the bar is heightened by the difficulties and inefficiencies inherent in representing clients who do not speak English and whose labor claims are intertwined with immigration issues requiring counsel to understand immigration law. This coupled with the significant time commitment required to pursue a complex class wage and hour action made the case undesirable to other counsel not prepared to take on such a commitment without a retainer or fixed fee.

**(11) The Nature and Length of the Professional Relationship with the Client**

"In describing this factor, the *Johnson* court noted that a lawyer may vary his or her fee for similar work in light of the professional relationship of the client with the lawyer." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,* 625 F. Supp. at 1153. Here, counsel for Plaintiff did not have a professional relationship with Plaintiff or any Class member prior to the instant litigation and does not anticipate any further professional relationship with them after the conclusion of this matter.

**(12) Awards in Similar Cases**

Awards in similar FLSA cases are listed in subsection (5) above.

**Conclusion**

The 22% of the common fund attorney fee award requested is well within the range of reasonable percentage awards approved by Courts in similar cases and represents a significant reduction of counsel's lodestar-calculated fees. Because the 22% award is reasonable when viewed through the lens of the twelve *Johnson* factors,

11

the Court should approve the award in conjunction with the requested approval of the settlement agreement in this case.

                                          Respectfully submitted,

                                          *S/ Brandt Milstein*
                                          1123 Spruce Street, suite 200
                                          Boulder, CO 80302
                                          303.440.8780
                                          brandt@milsteinlawoffice.com

                                          *Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I filed this *Renewed Motion* electronically through the CM/ECF system, which caused all parties entitled to service to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

                                          *S/ Brandt Milstein*